398 A.2d 179

COMMONWEALTH of Pennsylvania ex rel. Mary
B. MAGRINI, Appellee,

v.

John B. MAGRINI.

Appeal of ALUMINUM COMPANY OF AMERICA, as sponsor
and plan administrator of the Employees' Retirement Plan
of Aluminum Company of America, Plan II, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 23, 1978.

Decided Jan. 18, 1979.

Reargument Denied March 14, 1979.

John M. Wilson, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for appellee.

Before PRICE, HESTER and WATKINS, JJ.

HESTER, Judge:

This is an appeal from the Order of the Court of Common Pleas of Allegheny County directing appellant to pay 50% of the monthly pension benefit due John B. Magrini, to the court, for the support of Mr. Magrini's wife, Mary B. Magrini.

The appellant in this action is the Aluminum Company of America, in its capacity as sponsor and plan administrator of the Employees' Retirement Plan of the Aluminum Company of America.

The original action was initiated by Mrs. Magrini against her husband, for support. Following a hearing on June 24, 1976, the court ordered Mr. Magrini to pay $175.00 a month for the support of his wife, pursuant to the provisions of the Civil Procedure Support Act, Act of July 13, 1953, P.L. 431, as amended, 62 P.S. §§ 2043.31—2043.44.[1]

On July 22, 1976, a wage attachment was issued by the court directing that the $175.00 a month support due from Mr. Magrini, be withheld from his wages by his employer, the Aluminum Company of America.

Subsequent thereto appellant became disabled and accordingly ceased his employment with the Aluminum Company of America. He thereafter successfully petitioned the court for a reduction to $90.00 a month.

On August 24, 1977, the court dissolved the prior attachment and issued a new attachment which directed the appellant to pay 50% of Mr. Magrini's pension to the court, for the support of Mrs. Magrini.

From that Order does this appeal lie.

■ Although the original support order was issued pursuant to the "Civil Procedural Support Act", supra, the order attaching the pension of Mr. Magrini was issued pursuant to the Act of May 10, 1921, P.L. 434 § 1, 48 P.S. § 136; which provides in relevant part:

---

1. Now found in the "Judicial Code" 42 Pa.C.S. §§ 6701–6713.

"Whenever any court of competent jurisdiction has made an order or entered a decree or judgment against any husband requiring him to pay any sum or sums for the support of his wife or children or both, the court may issue the appropriate writ of execution against any property, real or personal, belonging to the defendant to enforce said order, decree, or judgment, and the said court may issue a writ of attachment execution, or writ in the nature of attachment execution, against any money or property to which said husband is entitled, whether under what is known as a spendthrift trust or otherwise; . . ."

Our court has had occasion to review this statute with regard to pension benefits. In *Commonwealth ex rel. Cerminara v. Cerminara,* 239 Pa.Super. 111, 362 A.2d 1011 (1976). (where lower court attached funds under control of City of Pittsburgh pension fund) We held that the Act of May 21, 1921, supra, did not authorize attachment of pension funds, under the control of the city government, for support, where the legislature had provided in the Second Class City Code, 53 P.S. § 23572, that all such funds in the hands of the city were immune from attachments for support. In that case, Judge Spaeth concluded that the statute pertained only to "Spendthrift trusts" and "not to all possible sources of income available to a delinquent husband". We believe, however, that the interpretation is limited to the facts of that case. Under those facts a specific legislative exemption existed. There the permanent obligation of familial support by a husband was subordinated to the policy that the administration of public funds is to be free from the uncertainties that may arise from private disputes. However, in our case, there is no enunciated policy protecting private pension funds which would override the public policy of ensuring support for the family.

Appellant argues, however, that in fact, a specific legislative exemption is provided by the Act of May 3, 1917 P.L. 112 § 1 as amended, 40 P.S. § 515:

". . . and any annuity or pension, whether by way of a gratuity or otherwise, granted or paid by any private corporation or employer or out of a trust fund established by any private corporation or employer to a retired employe, being a citizen of this Commonwealth, under an agreement, plan or trust indenture which provides that the same shall not be assignable or subject to execution or attachment, shall be exempt and free and clear from the claims of all his or her creditors, and from all legal and judicial processes of execution, attachment, or otherwise, whatsoever."

And therefore, since the pension fund in question here, included a clause forbidding alienation or attachment, the Act of 1917 protects the appellant against the attachment ordered below.

We disagree. The public policy behind this statute was succinctly stated by the Supreme Court in *Resolute Insurance Company v. Pennington*,[2] 423 Pa. 472, 224 A.2d 757 (1966):

The rationale behind laws exempting insurance proceeds from the claims of creditors is to encourage individuals to provide for their families and dependents. For some, an insurance policy is the best means of achieving a modicum of security; for others, it is the only means. To protect security so afforded, the legislature in clear language exempted such funds from invasion by creditors of the beneficiaries and from levy or attachment for the payment of their debts so long as the funds remain in the hands of the insurer. (id., 423 Pa. at 478, 224 A.2d 760).

Clearly, these types of statutes were specifically drawn to protect the beneficiary's family so he (or she) could not voluntarily or by means of creditor judgments, dissipate the assets and leave his family without a means of support. In view of this, we decline to interpret the Act of 1917, supra,

2. We note that this case was not specifically concerned with the act in question here, but two very similar acts, found in 40 P.S. § 514 and § 517. We believe the rationale as stated above is equally applicable here.

to protect a delinquent husband's pension funds from attachment for support.[3]

Appellant argues that we need not stretch our construction of the Act (if indeed we do) because the wife is not left out in the cold; her remedy is to execute on the funds after they have reached her husband's hands. We agree that that remedy is always available to the wife. However, more often than not, that "remedy" is nothing more than the right to file suit every month to enforce the support order. That point is especially noteworthy here where substantial arrearages are present. We believe our interpretation of the statutes more closely conforms to the strong public policy requiring the husband to support his wife.

■ Appellant next argues that since it's pension plan exists under, and conforms to Federal laws which immunize retirement plans from execution, regardless of what State law requires, the Federal law supercedes any State law, and thus the attachment below cannot stand.

The appellant's retirement plan conforms to the requirements of the "Employee Retirement Income Security Act of 1974", 29 U.S.C. § 1001 *et seq.* ("ERISA") and the "Internal Revenue Code" of 1954, 26 U.S.C. § 401 et seq. ("IRC"). Section 206(d) of "ERISA" provides (29 U.S.C. § 1056):

"(d)(1) Each pension plan shall provide that *benefits provided under the plan may not be assigned or alienated.*

"(2) For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974. The preceding sentence shall not apply to any assignment or alienation made for the purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit

---

**3.** Additionally, we note that a wife enforcing a support order is not a "creditor". *Commonwealth ex rel. Peterson v. Peterson,* 100 Pa.Super. 600 (1930).

and is exempt from the tax imposed by section 4975 of Title 26 (relating to tax on prohibited transactions) by reason of section 4975(d)(1) of Title 26." (Emphasis added.)

Section 401(a) of the Internal Revenue Code provides (at 26 U.S.C. § 401),

"(13) A trust shall not constitute a qualified trust under this section unless plan of which such trust is a part provides that *benefits provided under the plan may not be assigned or alienated.* For purposes of the preceding sentence, there shall not be taken into account any voluntary or revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975(d)(1). This paragraph shall take effect on January 1, 1976 and shall not apply to assignments which were irrevocable on September 2, 1974." (Emphasis added.)

(Immunity from assignment and alienation in the above context includes immunity from garnishment and attachment. See Treasury Regulations, 41 Fed.Reg. § 56334.)

Furthermore, appellant continues, Section 514 of ERISA provides that "This chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." (at 29 U.S.C. § 1144(a)).

Were this an ordinary attachment or garnishment, e. g. where the beneficiary owed money to a judgment creditor, we would have no problem in accepting appellant's argument as the correct course we should follow. However, with this particular attachment, we are concerned with the husband's duty to support his wife and that, we think, changes the situation.

Federal and State Courts have been confronted with the problem confronting us herein. Some have resolved this problem in favor of appellant. See *General Motors v. Townsend (E.D.Mich.) (1978), C.C.H. Pension Fund Guide ¶ 22,862. Others have permitted the attachment in favor of the wife.* See Cody v. Riecker, *454 F.Supp. 22 (1978) (E.D.N.Y.) and* Cartledge v. Miller, *457 F.Supp. 1146 (1978) (S.D.N.Y.), also* Cogollos v. Cogollos, *93 Misc.2d 406, 402 N.Y.S.2d 929 (New York Supreme Court, 1978).*

For the reasons set forth below, we believe that the attachment as issued by the lower court was not in violation of "ERISA", supra or the "I.R.C.", supra.

In *Cody v. Riecker,* supra, the court concluded that the spendthrift provisions of ERISA do not preclude a wife from attaching the retirement funds of her husband whose support payments are in arrears. They refused to presume congressional intent to preempt a state created obligation to support one's spouse.

In *Cartledge v. Miller,* supra, the court implied an exception to ERISA and the IRC. They pointed to all the other Federal Acts where execution and attachment is forbidden, e. g., The Social Security Act, the Veterans Benefits Act, the Railroad Retirement Act and the Bankruptcy Act. Those acts the court continued, either specifically allowed attachment for support obligations or it had been implied by courts. The court concluded by saying that it would be absurd to construe this act to forbid attachment of pensions for support purposes, when the purpose of the non-alienability clauses was to protect the employees pension from claims hostile to the needs of his dependents.

We think the above rationale is too reasonable to ignore. The purpose of the exemption clauses is to prevent the dissipation of one's pension, so that he can support his family (or himself). To prevent an attachment, whose purpose is to discharge the same obligation that the exemption clause was created to protect, would, in our opinion, be an injustice.

Thus we conclude that the attachment issued by the court below was not contrary to Federal law.

Finally, appellant argues that it was denied due process of law, where the lower court issued the attachment without giving it notice or an opportunity to be heard.

It is fundamental that before one can be deprived of any property interest, notice and a hearing must be provided. See *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). We see no significant property interest that appellant was deprived of. The pension of Mr. Magrini is vested. Appellant merely has the ministerial duty of distributing the appropriate amount to Mr. Magrini each month.

Appellant argues, however, that it would lose a significant property interest since, if it does not follow the dictates of ERISA, supra, then it will not qualify for tax exemptions under the I.R.C., supra. In view of our discussion of the prior assertion, we think this argument is devoid of merit.

Thus we conclude that the failure to afford the appellant notice and a hearing before the attachment was issued did not deprive it of a significant property interest and thus did not violate due process requirements.

The Order of the Court Below is Affirmed.