419 A.2d 175

**Robert L. SHAW**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, a corporation, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Decided March 14, 1980.

Reargument Denied July 8, 1980.

222

Dennis J. Lewis and J. Gary Kosinski, Pittsburgh, for appellant.

John A. DeMay, Pittsburgh, for appellee.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from an order denying a pre–trial motion by Westinghouse Electric Corporation to dismiss, in part, a complaint in assumpsit filed by Robert L. Shaw against Westinghouse.

The complaint alleges that in September 1969 Shaw accepted an offer of employment from Westinghouse as General Manager of its Portable Products Division upon the following terms:

(a) That Plaintiff would receive a stock option for 2,000 shares of stock at an option price of $26.50.

(b) That Plaintiff would be paid a salary of $50,000 per year.

(c) That after six months employment, Plaintiff's salary would be increased by 8%. This percentage increment would continue to be applied annually thereafter while Plaintiff was the General Manager of the Portable Products Division.

(d) That Plaintiff would be guaranteed a yearly bonus of between $8,000 per year and $23,000.00 per year, such amounts being the established bonuses of the previous General Managers of that Division: with the possibility of the bonus increasing to an amount equal to the yearly salary of Plaintiff.

(e) That the employment date of Plaintiff would be be back–dated to September 15, 1969.

(f) That Plaintiff would have the title of General Manager.

(g) That Plaintiff would have retirement benefits equal to 60% of his base salary.

(h) That Plaintiff would be paid all moving expenses.

(i) That Plaintiff would have the option to purchase Westinghouse Electric Corporation stock at a reduction of 10% from the current market price.

(j) That Plaintiff would be employed by the Defendant for a number of years, to wit, a "long–term basis."

(k) That Plaintiff would assume complete control as General Manager over the Portable Products Division.

(*l*) That Plaintiff would receive life, health and other similar kinds of insurance.

Record at 2a–3a.

The complaint further alleges that Shaw worked for Westinghouse for three years, when he became seriously ill. Count I of the complaint avers that Westinghouse breached its contract with Shaw by not paying him the promised salary increases, and that as a result of the breach, Shaw has sustained the following losses:

| | |
|---|---|
| (a) Loss of 8% salary increments from September 15, 1969 to October 23, 1972 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 22,582.76 |
| (b) Loss of bonus based on maximum amount guaranteed by Defendant, for the years 1970, 1971 and 1972 . . . . . . . . . . . | 96,000.00 |
| Carried forward | $118,582.76 |
| Brought forward | $118,582.76 |
| (c) Loss of retirement and disability benefits during the period October 23, 1972 to October 23, 1984 . . . . . . . . . . . . . . . | 108,000.00 |
| (d) Loss of pension benefits to be computed on salary of $62,985.00 commenced, with age 65—precise amount to be computed. | |
| Total: | $226,582.76 |
| | plus pension benefits. |

Record at 6a.

Count II of the complaint avers that in August 1971, Westinghouse decided to sell its Portable Products Division; that it solicited Shaw "to utilize his contacts in the Industry" to assist the sale, and promised to pay him a finder's fee if he secured a purchaser and the sale was consummated; and that Shaw found a purchaser and the sale was consummated, but even so, Westinghouse refused to pay the finder's fee.

■ Westinghouse filed an answer and new matter to the complaint, and Shaw filed a reply to the new matter. The pleadings closed, the parties engaged in extensive discovery. On May 22, 1978, Westinghouse filed a motion for summary judgment, which was denied on September 27, 1978. Trial was scheduled for January 9, 1979. However, on December 15, 1978, Westinghouse filed a motion to dismiss the action on the ground that because of the federal Employee Retirement Income Security Act, Act of September 2, 1974, P.L. 93–406, 88 Stat. 832, 29 U.S.C. §§ 1001, et seq., the lower court lacked jurisdiction over the subject matter of the complaint.[1] On February 1, 1979, the court denied the motion, and this appeal followed.[2]

Westinghouse concedes, as it must, that the lower court has jurisdiction over Shaw's claims for a finder's fee and damages for the loss of salary increases and bonus. The only issue, therefore, is whether the lower court has jurisdiction over Shaw's pension and disability benefits claims.[3]

1. 1. Although Westinghouse did not raise the issue of the lower court's jurisdiction over the subject matter of Shaw's complaint until less than a month prior to the scheduled trial, the issue was not waived. See, e. g., Haefele v. Davis, 373 Pa. 34, 41, 95 A.2d 195, 198 (1953); 2 Goodrich–Amram 2d § 1017(b): 7 at 53.

2. Westinghouse invokes the jurisdiction of this court pursuant to the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, repealed by the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, No. 53, 42 C.P.S.A. § 20002(a) [1069] (1979 Pamphlet) (eff. June 27, 1980). See also Lukus v. Westinghouse Electric Corporation, 276 Pa.Super. ——, 419 A.2d 431 (1980).

3. Given Westinghouse's concession that this is the only issue, we have some question as to whether we should consider Westinghouse's claim that ERISA preempts the lower court's power to

The gist of Westinghouse's argument may be stated as follows. Congress enacted ERISA to afford comprehensive federal protection of the interests of participants in employee benefit plans. There is no dispute that Westinghouse's employee disability benefits plan and retirement pension plan are "employee benefit plans" within 29 U.S.C. § 1002, and are subject to the provisions of ERISA.[4] State regula-

adjudicate Shaw's claim for disability and retirement benefits. 12 P.S. § 672 allows Westinghouse to appeal only from the lower court's determination that it had jurisdiction over Shaw's "cause of action." "Cause of action" has been defined as "the particular matter for which the action is brought;" a cause of action arises "from the existence of a primary right in the plaintiff and an invasion of that right by some delict on the part of the defendant." 1 Stand.Pa.Prac.— Actions at Law § 3 (1960) (footnotes omitted) at 444. As such, "[t]he term 'cause of action' should be distinguished not only from the word 'remedy,' but also from the 'relief' sought, which is not part of the cause of action." Id. (footnote omitted). The question is posed, therefore, whether the objections Westinghouse raises on this appeal attack the lower court's order sustaining its jurisdiction over Shaw's cause of action, or whether the objections attack only the kind of relief the court may award in the event it finds that Westinghouse breached its contract with Shaw. We note, however, that on February 7, 1979, this court denied a motion by Shaw to quash this appeal. This order has apparently not been appealed to the Supreme Court, nor has Shaw raised the propriety of our order in his brief or during oral argument. Therefore, we shall not reexamine Westinghouse's right to this appeal, but shall assume for the present purposes that our order correctly disposed of that issue.

4. 29 U.S.C. § 1002 provides:
   For purposes of this subchapter:
   (1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
   (2) The terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express

tion of the plans is therefore restricted by 29 U.S.C. § 1144, which provides:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and sub-chapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .

\* . \* \* \* \* \*

(c) For purposes of this section:

terms or as a result of surrounding circumstances such plan, fund, or program—

(A) provides retirement income to employees, or

(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

(3) The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

Westinghouse is an "employer" under 29 U.S.C. § 1002(5).

29 U.S.C. § 1003 provides:

(a) Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce;  or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce;  or

(3) by both.

(b) The provisions of this subchapter shall not apply to any employee benefit plan if—

(1) such plan is a governmental plan (as defined in section 1002(32) of this title);

(2) such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under section 410(d) of Title 26;

(3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws;

(4) such plan is maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens;  or

(5) such plan is an excess benefit plan (as defined in section 1002(36) of this title) and is unfunded.

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . .

(2) The term "State" includes a State, and political subdivisions thereof, or any agency of instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

This preemption must be given effect, for it constitutes an exercise by Congress of its powers under article VI, cl. 2, of the United States Constitution (the supremacy clause). *See generally Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980). Therefore, according to Westinghouse it follows that ERISA entirely "preempts the field of provision of pension and disability benefits, . . [and] Shaw's claims for pensions and disability benefits can only be recoverable, if at all, under ERISA." Brief for Appellant at 12. This broad assertion, however, does not follow from the premises Westinghouse establishes, and it fails to address the narrow issue before us.

■ Section 1144(a) explicitly states that the provisions of ERISA supersede state laws only "insofar as they . . . *relate* to any employee benefit plan." The question for disposition, therefore, is whether Shaw's assumpsit action against Westinghouse for disability and retirement benefits may be said to "relate to" the disability benefits and retirement pension plans established by Westinghouse for its employees. More precisely, the question is whether Shaw's assumpsit action constitutes an attempt to regulate areas explicitly governed by the provisions of ERISA, or whether the action relates primarily to matters not governed by ERISA, and only indirectly affects Westinghouse's employee benefit plans in a way not in conflict with the purposes ERISA is designed to achieve. If the former is true, then the action may be preempted by section 1144; but if the latter is true, the action is not preempted. *See Lukus v. Westinghouse Electric Corp., supra* (collecting cases); *Com-*

None of the exceptions in section 1003(b) applies to this case.

*monwealth ex rel. Magrini v. Magrini*, 263 Pa.Super. 366, 398 A.2d 179 (1979).

It is certainly easy to suppose that an employee might bring an action in assumpsit against an employer for disability and retirement benefits that would not "relate to" an employee benefit plan. Suppose, for example, Shaw had alleged that while promising to provide him with retirement benefits equal to 60% of his base salary, Westinghouse had established a pension plan that provided retirement benefits equal to only 40% of his base salary. If Shaw sued Westinghouse in assumpsit for breach of its promise to provide retirement benefits equal to 60% of his base salary, his suit would neither directly nor indirectly relate to the pension plan established by Westinghouse. So far as the plan would be concerned, Shaw would be entitled to benefits no greater than 40% of his base salary, and so long as the plan paid that amount, Shaw would have no action against it. Shaw's only action would lie against Westinghouse, and that action would in no way affect his rights under the plan.

The present case, of course, is a bit more involved than the one just supposed. Instead of alleging that Westinghouse established a plan providing fewer benefits than the benefits Westinghouse promised him, Shaw alleges that Westinghouse has paid him less salary and fewer bonuses than it promised to pay, and that as a result, he has received, and will continue to receive in the future, fewer benefits under Westinghouse's disability benefits and retirement pension plans than he would have received had he been properly paid by Westinghouse. Thus, in order for Shaw to recover on his claims, the lower court will be required to determine what Shaw's benefits would have been *under the plans* had Westinghouse paid him the promised salary increases and bonuses. Additionally, the court may be required to determine whether Shaw will have a future claim against the disability benefits and retirement pension plans for increased benefits based upon a judgment recovered against Westinghouse on

his salary and bonus claims.[5] Should the lower court find it necessary to address such issues, then it might be argued that the lower court would be making an adjudication "relating to" the plans. We are, nevertheless, unable to conclude that the lower court's adjudication would violate section 1144 of ERISA.

Initially, we note that section 1132(e)(1) of ERISA grants state courts of competent jurisdiction and federal district courts concurrent jurisdiction of an action brought by a participant in an employee benefit plan to recover benefits due to him under the terms of the plan, or to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. Thus, Congress has explicitly given state courts the power to adjudicate the very issues the lower court may be required to reach in Shaw's suit against Westinghouse.

Westinghouse complains that Congress gave state courts power to determine such issues only in proceedings brought under section 1132 where the employee benefit plans are named parties. Since Shaw's action is not brought under

5. The court may have to determine this because if Shaw, by recovering from Westinghouse lost salary increases and bonuses, obtains the right to have all past and future disability and retirement benefits from the plans recomputed on the basis of the salary he was paid during his years of employment at Westinghouse, then it may not be possible to conclude that Westinghouse's breach caused any impairment of Shaw's right to participate in the plans. If there has been no impairment, then there may be no loss of disability and retirement benefits for which Westinghouse is liable.

It is essential, however, to appreciate the procedural context of the above discussion. We are not deciding today that Shaw has a cause of action against Westinghouse for the loss of disability and retirement benefits. Nor are we deciding the elements of such a cause of action, if it exits, nor the placement of burdens of proof, nor the existence of affirmative defenses. Our discussion must be read in light of the sole issue that is before us—whether the lower court's jurisdiction to hear Shaw's assumpsit action against Westinghouse for disability and retirement benefits is preempted by ERISA. *Adler v. Philadelphia*, 397 Pa. 660, 156 A.2d 852 (1959); *Zerbe Township Sch. Dist. v. Thomas*, 353 Pa. 162, 44 A.2d 566 (1945). In treating this issue we find it necessary to imagine what possible issues may arise if the claims are tried in the lower court; we may thus determine whether the lower court's disposition of those issues would be impermissible under ERISA.

section 1132, and the plans are not named defendants, Westinghouse argues, the action cannot be maintained. In making this argument, however, Westinghouse again overlooks the nature of Shaw's action and the limitation in section 1144(a) of ERISA that only state laws that "relate to" employee benefit plans are superseded by the Act. Shaw's suit against Westinghouse relates solely to Westinghouse's liability for breach of an employment contract. Admittedly, in determining Westinghouse's liability, the lower court may have to make determinations concerning Shaw's present and future rights to benefits under Westinghouse's plans, and decide whether Shaw's right to participate in the plans has been wrongfully impaired by Westinghouse. Yet, these determinations will affect only the rights and liabilities of the parties to this action (*i. e.*, Shaw and Westinghouse) towards each other; specifically, unless Westinghouse and its employee benefits plans are privies or the plans perform some act that estops them from questioning the lower court's determinations at a later date, the determinations of the lower court in this case will not conclude the rights and liabilities of the plans and Shaw *inter se*. *See generally Safeguard Mutual Ins. Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); *Albert v. Lehigh Coal & Nav. Co.*, 431 Pa. 600, 613, 246 A.2d 840, 846 (1968); *Thompson v. Karastan Rug Mills*, 228 Pa.Super. 260, 323 A.2d 341 (1974). If the plans are bound by the lower court's determinations, that will occur only because the interests of the plans are represented, either directly or indirectly, in the present action, or the plans have refused to appear without just cause.[6]

If the plans are not concluded by the lower court's determinations by principles of res adjudicata or collateral estoppel, then the only possible way the plans may be affected by the present action is through the principle of *stare decisis*.

---

6. We note that section 1132(d)(1) of ERISA confers upon an employee benefits plan the status of an entity that is subject to legal process. We also note that in the present case Westinghouse is the administrator of its retirement pension plan. We make no determination here whether *Westinghouse is or is not* capable of representing the interests of the plans in the present action.

Yet, Westinghouse has not explained how the possibility that the lower court's determinations may affect potential future litigation between Shaw and the plans through *stare decisis* differs in any way from the possibility that the holdings in any of the countless contract actions brought in this Commonwealth may affect the outcome of future litigation between Shaw and the plans.

■■■ Westinghouse's remaining arguments may be disposed of summarily. Westinghouse argues that the lower court lacked subject-matter jurisdiction because the plans were necessary and indispensable parties to Shaw's action for disability and retirement benefits. As the discussion above implies, the plans were not necessary and indispensable parties. *See generally Pocono Pines Corp. v. Pa. Game Comm.*, 464 Pa. 17, 345 A.2d 709 (1975); *Powell v. Shepard*, 381 Pa. 405, 113 A.2d 261 (1955) (a party is indispensable only when its rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights). Westinghouse also argues that the lower court lacked jurisdiction because Shaw failed to exhaust his administrative remedies against the plans. However, Shaw's action is not against the plans but against Westinghouse; Westinghouse does not allege that Shaw had administrative remedies against it, which he failed to exhaust. Finally, Westinghouse argues that it cannot be held liable for Shaw's retirement claims because of a disclaimer provision contained in its retirement pension plan. This argument, however, does not go to the jurisdiction of the lower court to hear Shaw's motion, but to the merits of the action.

The order of the lower court is affirmed.

VAN der VOORT, J., files a dissenting statement.

VAN der VOORT, Judge, dissenting:

Plaintiff–appellees' claims designated as (c) "Loss of retirement and disability benefits during the period October 23, 1972 to October 23, 1984 . . . $108,000.00" and (d)

"Loss of pension benefits to be computed on salary of $62,985.00 commenced with age 65—precise amount to be computed," are clearly related to an employee benefit plan and as such are subject to the provisions of the Employee's Retirement Income Security Act, (Act of September 2, 1974, P.L. 93–406, 88 Stat. 832, 29 U.S.C. §§ 1001, *et seq*.).

These matters have been preempted by Congress and our State Court lacks jurisdiction to determine these two issues. I therefore would reverse as to claims (d) and (e).