458 A.2d 983

**B.F. TATTERSON**

v.

**KOPPERS COMPANY, INC., a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1982.

Filed March 31, 1983.

John Edward Beard, III, Pittsburgh, for appellant.

Michael J. Seymour, Pittsburgh, submitted a brief on behalf of appellee.

Before CERCONE, President Judge, and SPAETH, CAVANAUGH, WICKERSHAM, BROSKY, BECK and JOHNSON, JJ.

JOHNSON, Judge:

This appeal presents the question whether or not the exhaustion doctrine should be applied in this Commonwealth to disputes involving the administration of a company-sponsored retirement plan established under the Employment Retirement Income Security Act of 1974 (ERISA).[1] Specifically, we here consider whether a former employee who claims he is not receiving the amount of retirement benefits to which he believes himself to be entitled under the employer's retirement plan *must* appeal the denial of his request for further benefits to the employer's pension committee before filing an action against the employer in the courts, when the claims procedure of the retirement plan provides that any person whose application is denied *may* file a request to the pension committee for a review of the decision, and where the claims procedure provides for

1. 29 U.S.C. § 1001 *et seq.* (1976 & Supp.).

review by the same company-controlled committee which initially denied the claim.

B.F. Tatterson, appellee, a retired salaried employee of defendant Koppers Company, Inc. [Koppers], brought this action in assumpsit to recover retirement benefits allegedly due him under Koppers' retirement plan. Koppers filed preliminary objections arguing that the court of common pleas lacked subject matter jurisdiction over this controversy inasmuch as federal law requires the exhaustion of the remedies established by the plan before suit may be entertained. The trial court overruled Koppers' objection, and Koppers appealed to this court.[2]

As explained hereinafter, we hold that the exhaustion doctrine applies in Pennsylvania to claims for benefits under employee benefit plans governed by ERISA and that the court of common pleas erred in assuming subject matter jurisdiction over this controversy. We therefore reverse the trial court's order.

The Koppers retirement plan provides salaried employees of Koppers and its subsidiaries with retirement benefits based primarily upon the employee's salary and years of service. The plan is funded by Koppers and is administered by a pension committee which consists of at least three officers, directors or employees of Koppers, appointed by the board of directors to serve at the board's pleasure. The pension committee is concededly a named fiduciary within the meaning of section 402(a) of ERISA, 29 U.S.C. § 1102(a).

The Koppers plan provides the following claims procedure:

1. All applications for benefits under the Retirement Plan of Koppers Company, Inc. and subsidiaries For Salaried Employees ("Plan") shall be filed with the Pension Committee.... Applications for benefits must be in writing on the forms prescribed by the Pension Commit-

2. Appeal was taken pursuant to Section 1 of the Act of March 5, 1925, P.L. 23, 12 P.S. § 672, repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a), effective June 27, 1980.

tee and must be signed by the participant.... Each application shall be acted upon and approved or disapproved by the Pension Committee within 60 days following its receipt by the Company. In the event any application for benefits is denied, in whole or in part, the Pension Committee shall notify the applicant in writing of such denial and of his right to a review by the Pension Committee and shall set forth in a manner calculated to be understood by the applicant, specific reasons for such denial, specific references to pertinent plan provisions on which the denial is based, a description of any additional material or information necessary for the applicant to perfect his application, an explanation of why such material or information is necessary, and an explanation of the plan's review procedure.

2. Any person ... whose application for benefits is denied in whole or in part may file a request to the Pension Committee for a review of the decision by submitting to the Pension Committee within one year after receiving written notice from the Pension Committee of the denial of his claim a written statement:

(a) Requesting a review of his application for benefits by the Pension Committee;

(b) Setting forth all of the grounds upon which the request for review is based and any facts in support thereof; and

(c) Setting forth any issues or comments which the applicant deems pertinent to his application.

The Pension Committee shall meet at least bi-monthly to consider requests for review of applications for benefits and shall act upon each application within 60 days after receipt of the applicant's request for review.

3. The Pension Committee shall make a full and fair review of each such application.... On the basis of its review, the Pension Committee shall make an independent determination of the applicant's eligibility for benefits under the plan. The decision of the Pension Committee on any application for benefits shall be final and conclu-

sive upon all persons if supported by substantial evidence in the record.

4. In the event an application is denied in whole or in part, the Pension Committee shall give written notice of its decision to the applicant setting forth in a manner calculated to be understood by the applicant the specific reasons for such denial and specific references to the pertinent plan provisions on which its decision was based.

5. The Pension Committee shall give the plan participants notice of the specific address where claims and requests for review are to be filed.

The court of common pleas ruled that the word "may" in paragraph 2 gave the claimant the choice between appealing either to the committee or directly to the courts.

█ We shall consider first the statute which governs rights and obligations under private welfare and pension plans such as the Koppers plan. ERISA specifically provides that it applies to any employee benefit plan if the plan is established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a)(1). ERISA also provides that it supersedes any and all state laws insofar as they may relate to any such employee benefit plan. 29 U.S.C. § 1144(a). ERISA provides further that a claims procedure be established within the structure of such benefit plans. 29 U.S.C. § 1133. And although ERISA authorizes civil actions in either federal or state court to recover benefits due, 29 U.S.C. § 1132(a), (e)(1), the courts in different jurisdictions, *see infra,* have required that plan claims procedures be exhausted before suit may be brought in the courts. The rationale for this requirement has been ably explained in an opinion by the United States Court of Appeals for the Ninth Circuit, in a case brought by a union member against the trustees of a union pension trust. In *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980), the court said:

It is true that the text of ERISA nowhere mentions the exhaustion doctrine. The question therefore may be

raised as to whether Congress intended to grant the authority to the courts to apply that doctrine in suits arising under ERISA.... [W]e conclude from both the legislative history and the text of ERISA that Congress did intend to grant such authority to the courts, and that sound policy requires the application of the exhaustion doctrine in suits under the Act.

We note first that in enacting ERISA, Congress "intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans".... Second, the legislative history of ERISA forges an explicit link between suits under ERISA and suits under section 301 of the LMRA.... [A]ll actions under ERISA to enforce benefit rights under a covered plan or to recover benefits under the plan, whether brought in federal or state courts, "are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947." But the federal courts have long fashioned federal common law under § 301 of the LMRA ...; and part of that law has been that where administrative remedies are available they must usually be exhausted by an aggrieved party before his § 301 complaint will be heard.... The legislative history of ERISA thus clearly suggests that Congress intended to grant authority to the courts to apply the exhaustion requirement in suits arising under the Act.

Third, ERISA itself requires covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied.... It also permits the Secretary of Labor to prescribe regulations governing such administrative remedies, ... and the Secretary has done so.... [T]he institution of such administrative claim-resolution procedures was apparently intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method

of claims settlement; and to minimize the costs of claims settlement for all concerned. It would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used. Moreover, the trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA, ... and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes. The text of ERISA and the policies underlying that text, far from suggesting that Congress intended to abrogate the exhaustion requirement in the case of suits under ERISA or that sound policy would counsel its abrogation by the courts, suggest just the opposite.

Finally, a primary reason for the exhaustion requirement, here as elsewhere, is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies....

In sum, we conclude that the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so.

*Amato v. Bernard,* 618 F.2d at 566–68 (footnotes and citations omitted). *See also Challenger v. Local Union No. 1 of the International Bridge, Structural and Ornamental Ironworkers,* 619 F.2d 645 (7th Cir.1980); *Kross v. Western Electric Co., Inc.,* 534 F.Supp. 251 (N.D.Ill.1982); *Wolf v. National Shopmen Pension Fund,* 512 F.Supp. 1182 (E.D.Pa.1981); *Scheider v. United States Steel Corp.,* 486 F.Supp. 211 (W.D.Pa.1980); *Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071 (E.D.Pa.1979); *Taylor v. Bakery and Confectionary Union and Industry International Welfare Fund,* 455 F.Supp. 816 (E.D.N.C.1978).

We see no reason why the courts of Pennsylvania should hold any differently. Indeed, assuming that the above rationale is the correct interpretation of Congressional intent, we have no choice, in view of the pre-emption language of section 514 of ERISA.[3] We therefore adopt the rationale so clearly put forth by the court in *Amato v. Bernard* as the rationale for our holding that the exhaustion doctrine applies in Pennsylvania to claims for benefits under employee benefit plans governed by ERISA.

■ Against the backdrop of this case law we are presented with the argument that the word "may" appearing in paragraph 2 of the Koppers plan claims procedure gives a claimant the choice between exhausting the plan's remedies or proceeding directly to court. The trial court found that the language did not make clear that the plan intended to require an applicant to request committee reconsideration as a prerequisite to court review.

We disagree. If the word "may" were replaced by "shall" or "must" or "should", could this not mean that any person denied a pension had to request review whether he wished to or not? When the entire procedure is read, it is clear that it is telling the participant that he must submit his initial application in writing. If this is denied, the denial must also be in writing, and the claimant must be notified of his "right to a review by the Pension Committee." Paragraph 2 then tells the participant that the way to request review, *if he wants review,* is to submit a written

3. Section 514, 29 U.S.C. § 1144, provides in pertinent part:

   **§ 1144. Other Laws**
   **Supersedure** ...

   (a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

   *See generally Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 241–59, 419 A.2d 431, 436–45 (1980), where this court, per Spaeth J., discussed the extent of the ERISA pre-emption language with respect to the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 951 *et seq.*

statement following certain guidelines. Paragraph 5 tells the participant that the pension committee will tell him where "claims and requests for review are to be filed." In other words, the plan, as required by ERISA, 29 U.S.C. § 1133, tells the participant that he has the right to appeal to the committee if he wishes, and if he does so wish, how he is to proceed.[4]

In view of the congressional command that claims procedures be provided for, 29 U.S.C. § 1133, and that the Koppers plan claims procedure appears to be in obedience to that command, we disagree with the trial court that the word "may" is to be interpreted as giving the claimant a choice between following the plan's claims procedure or suing the plan in court. We believe that the interpretation which we have given of the word "may" is compatible with the general understanding in the different courts that claims procedures provided by ERISA plans must be exhausted before civil actions are brought in the courts. We do not believe that the use of the word "may" in the Koppers plan is intended, or should be permitted, to create an exception to the usual rule requiring exhaustion of plan procedure.

The trial court's second reason for not requiring exhaustion of the plan's procedures was that the pension committee, being controlled by Koppers' board of directors, could not be expected to rule differently the second time, and that the judicial deference accorded to the decisions of independent bodies considering grievances and other labor disputes should not be accorded to the decisions of a company-controlled committee.[5]

4. *Compare* Pennsylvania Rule of Appellate Procedure 501, 42 Pa.C.S.A. (Pamp.1982):

**Rule 501. Any Aggrieved Party May Appeal**

Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

5. Another part of the trial court's rationale for its decision not to require exhaustion of the plan's claims procedure was that the exhaustion doctrine means "inherent delays." On the contrary, the Koppers

■ It is true that a participant claiming benefits under a plan need not exhaust the plan's remedies where the effort to follow these procedures would be futile. *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) (exhaustion of contractual or administrative remedies could be by-passed by black railwaymen alleging that racial discrimination by the union and the railroad caused denial of promotion and frustrated their attempts to present grievances to the union and to the railroad). A second exception is the situation where a claimant is wrongfully denied meaningful access to the plan's procedures, *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (employee who can prove that the union as bargaining agent breached its duty of fair representation, *e.g.*, by not processing a grievance against the employer, may bring an action against the employer without exhausting grievance procedures).

The case before us does not fit into either of these exceptions. We decline to rule that review by a company-controlled committee is *per se* futile. The committee is statutorily bound as a fiduciary to discharge its duties solely in the interest of the participants and beneficiaries of the plan. 29 U.S.C. § 1104. The committee is also bound by the language of the plan to conduct a "full and fair review" of the claim and to make an "independent determination." Paragraph 3. ERISA provides penalties, including personal liability, for breach of these fiduciary duties. 29 U.S.C. § 1109.

In the absence, therefore, of any factual allegations indicating that an attempt to seek review of the committee's initial denial of benefits under the Kopper's plan would be futile, we hold that participants in retirement plans who are claiming benefits under those plans must exhaust the claims procedure provided for in the plan as mandated by

plan contains specific limitations on the time the committee may take to render a decision. And slowness of the procedure is not one of the accepted escape hatches out of the exhaustion doctrine unless, as in the *Vaca* or *Glover* cases, *infra*, there is a deliberate blocking of the claimant's access to grievance or claim review procedures.

ERISA before bringing civil actions in our courts, and that neither the word "may" in the procedure, nor the fact that the pension committee serves at the pleasure of the board of directors, countermands this rule.

In his attempt to by-pass the plan's review procedure, appellee argues that he is not seeking relief from the pension committee but from the corporation, in an action in assumpsit for breach of the corporation's agreement to pay him a pension in an amount determined under the terms of the plan to a 36½ year retired employee. He compares his situation to the situation in *Shaw v. Westinghouse Electric Corp.*, 276 Pa.Super. 220, 419 A.2d 175 (1980). In *Shaw,* this court held that the court of common pleas did have jurisdiction over the claimant's pension and disability benefits claims because the action was not a claim for benefits, but rather a dispute over his employment contract. The claimant was alleging that the corporation had paid him less salary and fewer bonuses than it had promised to pay and that as a result he was receiving fewer benefits under the plans than he would have received had he been paid as promised. This claim was an *action only indirectly affect*ing the employee benefit plans and thus not governed by ERISA, and therefore not subject to the exhaustion of remedies doctrine.

The instant claim, however, contrary to appellee's argument, relates directly to the Koppers plan. Although appellee claims to be suing Koppers for breach of contract, he asserts in his complaint:

4. That since his retirement Plaintiff has been receiving the sum of $534.43 each month from Defendant's retirement plan plus cost of living increases.

5. That Plaintiff selected option one of the Defendant's retirement plan and has calculated his retirement benefits based upon his years of service and salary and finds he should be receiving $909.02 per month plus cost of living increases. . . .

6. That Plaintiff has made demand upon the Defendant to pay the proper amount under the terms of the plan which Defendant refuses to do in breach of the terms of the said plan.

7. That as a result of Defendant's refusal the Plaintiff has lost to date the sum of $5,993.44 plus cost of living increases and continues to be damaged with each monthly payment.

This claim is precisely an action "to recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B). The claim is therefore within the embrace of ERISA and to be pursued in adherence to the rule requiring exhaustion of the plan's claims procedure. We view the *Shaw* case to be totally inapposite to appellee's claim.

We note that the claims procedure in the Koppers plan requires that an appeal from the initial denial of benefits be submitted to the pension committee in writing within one year after receipt of notice by the claimant of the adverse decision. In this case appellee, in 1979, elected to file his suit in assumpsit rather than to file a written request with the pension committee for a review of that denial. At oral argument this court was advised by Koppers' able counsel that the company would not seek to impose any limitation upon appellee's right of appeal before the pension committee as a result of the delay occasioned by appellee's premature attempt to seek judicial review.

The right of the appellee, B.F. Tatterson, to pursue his claim under the Koppers plan claims procedure shall remain the same as existed immediately prior to the filing of the complaint in the within case.

The order of the trial court is reversed with directions that the trial court dismiss the complaint for lack of subject matter jurisdiction.