545 A.2d 367

David A. NOBERS, Robert R. Campbell, Jr., Gasper P. Porto, and Gary T. Weekly, Individually and on Behalf of Themselves and all Others Similarly Situated, Appellant,

v.

CRUCIBLE, INC., a Corporation and Colt Industries, Inc., a Corporation, Appellees.

Superior Court of Pennsylvania.

Argued March 17, 1988.

Filed July 25, 1988.

Gregory Gleason, Pittsburgh, for appellants.

Walter G. Bleil, Pittsburgh, for appellees.

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of the Court of Common Pleas of Beaver County granting the preliminary objections in the nature of a demurrer as to jurisdiction against the appellants/plaintiffs (David A. Nobers, Robert R. Campbell, Jr., Gasper P. Porto and Gary T. Weekly,

individually, and on behalf of themselves and all others similarly situated). We reverse.

Since review of the sustainment of preliminary objections in the nature of demurrer is sought, the well-pleaded factual allegations set forth in the complaint are to be regarded as true. *Itri v. Equibank, N.A.,* 318 Pa.Super. 268, 464 A.2d 1336 (1983). Further, if the facts as pleaded state a claim for which relief may be granted under any theory of the law, then there is sufficient doubt to require the preliminary objections in the nature of a demurrer to be rejected. *Mazzagatti v. Everingham,* 512 Pa. 266, 516 A.2d 672 (1986).

Viewed in this light, the record indicates that the plaintiffs filed a two-count complaint seeking "class action" certification to recoup damages from the appellees/defendants (Colt Industries, Inc. and its wholly owned subsidiary, Crucible, Inc., now incorporated as Colt Industries Operating Corp.) for violation of an alleged oral agreement/implied contract whereby the class of plaintiffs was "explicitly promised", at the time of promotion from a collective bargaining unit to a supervisory or managerial position, "a right to return to the bargaining unit from which promoted at the time of layoff or to be treated as a bargaining unit person on layoff status." (Paragraph 36)

Prior to the defendants ultimately closing all or part of their plant in Midland, the plaintiffs were laid-off or discharged as salaried employees instead of being returned to the bargaining unit out of which they initially were promoted or allowed to maintain laid-off status in the same unit. This, the plaintiffs contended, resulted in their incurment of damages "in the form of lost supplemental unemployment benefits.... lost immediate pension benefits.... lost pension benefits.... [and] lost insurance benefits." (Paragraphs 43–46, 50–53)

Thereafter, the defendants filed a petition seeking to remove the suit to the United States District Court for the Western District of Pennsylvania on grounds of compliance with 28 U.S.C. §§ 1332 and 1441 (Diversity of citizenship

and amount in controversy exceeded $10,000), as well as pendent and ancillary jurisdiction, the latter of which referred to the District Court's prior ruling in favor of the defendants regarding the same subject matter in *Nobers, et al. v. Crucible, Inc., et al.*, Civil Action No. 821846 (W.D.Pa. 1982), aff'd mem., 722 F.2d 733 (3rd Cir.1983) warranting such a removal.

The plaintiffs responded by submitting a motion with the same court seeking to remand the case to Common Pleas Court. Therein, they claimed that the joint actions of the defendants, which were inseparable and not discrete, rendered removal under Section 1441 inappropriate. Further, because the prior federal suit involved additional parties not presently named, was based on the Labor Management Relations Act (29 U.S.C. § 185) and was brought to enforce the terms of a collective bargaining agreement, as compared to an express or implied contract of employment, it was averred that "[t]here was no factual nexus between the two cases to which the principles of res judicata or collateral estoppel appl[ied] such that the Court's ancillary or pendent jurisdiction m[ight] be the basis for removal of the[ ] proceedings." The District Court agreed and entered an order to that effect on February 8, 1985. 602 F.Supp. 703.

Twenty days after the District Court remanded the suit to Common Pleas Court, the defendants filed preliminary objections in the nature of a demurrer contemporaneously with presenting a complaint in federal court to enjoin the plaintiffs' state action.

In its complaint, the defendants stated that the unfavorable outcome of the previous federal suit by the plaintiffs at No. 82–1846, being premised upon the same allegations of contractual breach, made the state suit nothing more than "an attempt to evade judgment in Civil Action No. 82–1846" by the plaintiffs. Additionally, the defendants asserted that the plaintiffs' claims seeking the recoupment of damages "relate[d] to an[ ] employee benefit plan[ ]", and, as a result, were exclusively within the province of the Employ-

ee Retirement Income Security Act[1] (ERISA) and not subject to review in state court.

The plaintiffs filed an answer to the federal complaint in which they alleged, inter alia, that the state action was premised upon "a common law claim for breach of contract" and not a violation of a collective bargaining agreement, as had been the case in the earlier federal suit. Thus, res judicata did not apply. Further, the plaintiffs went on to contend, "because there [were] no federal claims in the pending state court action", notions of federal pre-emption did not come into play since "[q]uestions of pre-emption are determined by reference to the basis of liability not the scope of the remedy." The end result of the federal complaint was its dismissal by court order dated August 12, 1985.

As for the content of its preliminary objections, the defendants averred that "no employment relationship" existed between Colt Industries, Inc. and the plaintiffs. Thus, no agreement, either oral or written, bound the two contractually. Also, because the plaintiffs' prior federal suit covered "virtually" the same subject matter, "[t]he instant action [was] ... barred by the doctrine of *res judicata*." (Defendants' Complaint, Paragraph 12)

In response, the plaintiffs denied the availability to the defendants of res judicata or collateral estoppel as a defense since the issue litigated in the earlier federal suit (scope of collective bargaining agreement) was not identical to the present suit, which, in contrast, sought relief under "common law claims for breach of an express and/or implied contract of employment." (Plaintiffs' Response to Defendants' Preliminary Objections, Paragraph 3)

Prior to argument, the defendants filed an amendment to their preliminary objections contending that, by stipulation, the parties had agreed that the plaintiffs' suit against the defendant Colt Industries was for tortious interference of the plaintiffs' contract with Colt Industries Operating Corp., Colt's subsidiary. As such, the tort allegedly committed by

1. 29 U.S.C. § 1001 et seq.

Colt Industries, Inc. was "solely cognizable under Section 510 of ... ERISA, 29 U.S.C. § 1140", resulting, so believed the defendants, in the state action being pre-empted by Section 514 of ERISA, 29 U.S.C. § 1144 and subject to dismissal.

Following argument, the Common Pleas Court issued an order granting the defendants' preliminary objections as to jurisdiction and dismissed the action. This timely appeal ensued.

The sole contention raised centers upon whether the plaintiffs' common law cause of action for breach of contract, alleging the loss and seeking the reinstatement of supplemental unemployment, pension and insurance benefits, is pre-empted by ERISA so as to divest Common Pleas Court of jurisdiction to hear the complaint.

As noted most recently by a panel of this Court:

"[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent. ' "The purpose of Congress is the ultimate touchstone." ' "

*Engle v. West Penn Power Co.*, 366 Pa.Super. 104, 107, 530 A.2d 913, 915 (1987) (Citation omitted).

In light of the aforesaid, we observe that Congress enacted ERISA to afford comprehensive federal protection of the interests of participants in employee benefit plans. See 29 U.S.C. § 1001; *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980) (allocatur refused, June 1, 1980). Instantly no one disputes that the defendants' Supplemental Unemployment Benefit Plan, Pension Agreement and Program Insurance Benefits fall under the label of either an employee benefit plan, defined benefit plan or welfare benefit plan, respectively. (See RR 22a, 40a and 87a) And, as such, are subject to the provisions of ERISA. See 29 U.S.C. § 1003. State regulation of the plans is therefore restricted by 29 U.S.C. § 1144, which provides:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws inso-

far as they may now or hereafter *relate to* any employee benefit plan ....

\* \* \* \* \* \*

(c) For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.

. . . . .

(2) The term "State" includes a State, and political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

(Emphasis added)

It is the position of the defendants and the court below that the plaintiffs' claim for damages, inasmuch as it seeks satisfaction through the attainment of benefits provided for under the various plans, "related to" employee benefit plans. This, in turn, brings the plans within the ambit of ERISA's pre-emptive status, and, as a result, subjects the suit to exclusive federal jurisdiction. (See Defendants' Brief at 7; Lower Court's Opinion at 7) We find the contentions of the defendants and court below to be disingenuous, and we do so on the instructive case of *Shaw v. Westinghouse Electric Corp.*, 276 Pa.Super. 220, 419 A.2d 175 (1980) (reargument denied, July 8, 1980).

In *Shaw*, the plaintiff filed a two-count complaint in assumpsit, the first portion of which concerns us since it was alleged therein that the plaintiff's employer breached its contract with Shaw by not paying him promised salary increases. It was further averred that, as a result of the breach, Shaw sustained losses in (1) "retirement and disability benefits" and (2) "pension benefits".

Prior to completion of the trial, the employer filed a motion to dismiss the action on the ground that ERISA rendered the court without jurisdiction over the subject matter of the complaint. With the denial of the motion, an

appeal was perfected to this Court. In the course of denying the employer's arguments with regard to the pre-emptive effect of ERISA, we wrote:

Section 1144(a) explicitly states that the provisions of ERISA supersede state laws only "insofar as they ... *relate* to any employee benefit plan." The question for disposition, therefore, is whether Shaw's assumpsit action against Westinghouse for disability and retirement benefits may be said to "relate to" the disability benefits and retirement pension plans established by Westinghouse for its employees. More precisely, the question is whether Shaw's assumpsit action constitutes an attempt to regulate areas explicitly governed by the provisions of ERISA, or whether the action relates primarily to matters not governed by ERISA, and only indirectly affects Westinghouse's employee benefit plans in a way not in conflict with the purposes ERISA is designed to achieve. If the former is true, then the action may be pre-empted by section 1144; but if the latter is true, the action is not pre-empted. See *Lukus v. Westinghouse Electric Corp., supra,* (collecting cases); *Commonwealth ex rel. Magrini v. Magrini,* 263 Pa.Super. 366, 398 A.2d 179 (1979).

\* \* \* \* \* \*

The present case ... involve[s] ... alleg[ations] that Westinghouse established a plan providing fewer benefits than the benefits Westinghouse promised him, Shaw alleges that Westinghouse has paid him less salary and fewer bonuses than it promised to pay, and that as a result, he has received, and will continue to receive in the future, fewer benefits under Westinghouse's disability benefits and retirement pension plans than he would have received had he been properly paid by Westinghouse. Thus, in order for Shaw to recover on his claims, the lower court will be required to determine what Shaw's benefits would have been *under the plans* had Westinghouse paid him the promised salary increases and bonuses. Additionally, the court may be required to determine whether Shaw will have a future claim against the disabil-

ity benefits and retirement pension plans for increased benefits based upon a judgment recovered against Westinghouse on his salary and bonus claims. Should the lower court find it necessary to address such issues, then it might be argued that the lower court would be making an adjudication "relating to" the plans. We are, nevertheless, unable to conclude that the lower court's adjudication would violate section 1144 of ERISA.

Initially, we note that section 1132(e)(1) of ERISA grants state courts competent jurisdiction and federal district courts concurrent jurisdiction of an action brought by a participant in an employee benefit plan to recover benefits due to him under the terms of the plan, or to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. Thus, Congress has explicitly given state courts the power to adjudicate the very issues the lower court may be required to reach in Shaw's suit against Westinghouse.

\*       \*       \*       \*       \*       \*

... the nature of Shaw's action and the limitation in section 1144(a) of ERISA that only state laws that "relate to" employee benefit plans are superseded by the Act. Shaw's suit against Westinghouse relates solely to Westinghouse's liability for breach of an employment contract. Admittedly, in determining Westinghouse's liability, the lower court may have to make determinations concerning Shaw's present and future rights to benefits under Westinghouse's plans, and decide whether Shaw's right to participate in the plans has been wrongfully impaired by Westinghouse. Yet, these determinations will affect only the rights and liabilities of the parties to this action (*i.e.,* Shaw and Westinghouse) towards each other; specifically, unless Westinghouse and its employee benefits plans are privies or the plans perform some act that estops them from questioning the lower court's determinations at a later date, the determinations of the lower court in this case will not conclude the rights and liabilities of the

plans and Shaw *inter se.* *See generally Safeguard Mutual Ins. Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); *Albert v. Lehigh Coal & Nav. Co.,* 431 Pa. 600, 613, 246 A.2d 840, 846 (1968); *Thompson v. Karastan Rug Mills,* 228 Pa.Super. 260, 323 A.2d 341 (1974).

276 Pa.Super. at 227–230, 419 A.2d at 179–180 (Footnote omitted; emphasis in original).

At bar, as in *Shaw,* the plaintiffs' suit relates solely to the defendants' liability for breach of an employment contract, the existence of which is in dispute and, therefore, subject to resolution by a fact-finder. More importantly, as pointed out in *Shaw,* the plaintiffs' rights to benefits and whether participation under the various plans have been wrongfully denied "affect[s] only the rights and liabilities of the parties to this action", and "the determinations of the lower court in this case will not conclude the rights and liabilities of the plans and [the plaintiffs] *inter se.*" *Id.*

The association between the suit and the plans being tangential at best, we fail to see how ERISA is any more than incidentally involved, a factor which counsels against us concluding that the plaintiffs' claim is pre-empted by ERISA. To the same effect see *Welsh v. Northern Telecom, Inc.,* 85 N.C.App. 281, 354 S.E.2d 746 (1987); *Golen v. Chamberlain Manufacturing Corp.,* 139 Ill.App.3d 53, 93 Ill.Dec. 677, 487 N.E.2d 121 (1985); and *Shaver v. N.C. Monroe Construction Co.,* 63 N.C.App. 605, 306 S.E.2d 519 (1983), and compare with *B.F. Tatterson v. Koppers Co., Inc.,* 312 Pa.Super. 326, 458 A.2d 983 (1983).

Since we conclude that *Shaw* controls the outcome of this case and warrants a reversal of the lower court's actions, we see no need to engage in a dissertation of the law other than what has already been stated on the subject under review.

Accordingly, consistent with our findings this day, we reverse the judgment of the court below. Jurisdiction is relinquished.