## Commonwealth v. DiGrazio

*Stanley R. Kotzen*, for prosecutrix.

*Stanley M. Poplow*, for defendant.

WRIGHT, J., September 1, 1971.—On April 27, 1971, prosecutrix, Tickie P. DiGrazio, filed a petition for support, upon which a court hearing was held June 4, 1971. At the close of testimony, an order for support was entered in favor of the prosecutrix and against the defendant-appellant, in the amount of $25 per week for the wife.

The parties were married January 22, 1971. By a previous marriage, the prosecutrix had four children ranging in age from 16 to 22. Appellant, by his previous marriage, had one child, who was living with him at the time of the marriage and the hearing. The youngest child of the prosecutrix was living with her at the time of the marriage and at the time of the hearing.

Instant trouble befell the parties, rearing its unwanted head during the honeymoon. Cross-accusations were exchanged at the support hearing. Prosecutrix maintained that appellant displayed a remorseful attitude about the marriage, stating he should not have married so soon after his former wife's death, a time lapse of two years. Appellant maintained that his newly-married bride compared him to her former suitor, always unfavorably.

Upon their return from the honeymoon, prosecutrix was denied access to appellant's home, which was to have become their common abode. Prosecutrix also testified that appellant refused to help ready her house for sale, as they had agreed. Prosecutrix was never given a key to appellant's home, and for approximately five weeks attempted to live with defendant. The month of March saw the separation of the parties by agreement. Where there is a separation by agreement a husband is liable for the support of his wife.

The prosecutrix related that she had the following expenses as basic to her personal weekly existence:

| | |
|---|---|
| Food | $20.00 |
| Clothing | 15.00 |
| Mortgage | 25.00 |
| Utilities | 13.00 |
| Car payment | 24.50 |
| Transportation | 8.50 |
| Car insurance | 12.00 |
| Incidentals | 14.00 |

The total amount of the above is $132 per week. As a result of the marital confrontations, the prosecutrix had to seek medical attention, one cost being $41, which was necessitated by blood tests. This has not been paid due to insufficient funds of prosecutrix. A dentist bill is outstanding in the amount of $400.

It was also brought out in testimony that defendant had cancelled the Blue Cross and Blue Shield coverage of the prosecutrix and her son, purporting to have coverage of his own. This, apparently, is not so, because the prosecutrix testified that she now has her son under medical treatment for which he is not covered. Other unspecified alleged bills were said to amount to $200 per month, excluding medical bills.

Additionally, testimony indicates that defendant entreated his wife's 18-year-old to terminate employment, thereby reducing the family income. Prosecutrix related that defendant never provided her with any money to establish nor maintain a home, except for food consumed in his house, a $5.50 brassiere, one make-up, paid one doctor's bill of her son and one prescription.

The employment picture of the prosecutrix saw her enter the marriage with a job where her gross weekly wage was $130, net being $105. (Her past employer testified to a net of $111.59). She testified that she was forced to seek other employment due to her marital difficulties affecting her job. She secured another job in May 1971, after the parties' separation, and started at a gross weekly wage of $140 with an approximate net figure of $105 as testified to by her present employer. An additional deduction for group insurance will be added in the near future.

Appellant's testimony elicited the fact that he did not list his weekly expenses, but he does not "have any money to throw away when I'm done with it all." He testified he did have a savings account which held $1,100, and was participating in a savings plan at work, the weekly payment being $9. The estimated worth of the plan would be 42 bonds at $37.50 each, or a total of $1,575. Defendant's weekly net income was computed at approximately $138.

A past fellow employe of the prosecutrix was called to the stand by appellant in an attempt to depict the prosecutrix as engaging in extra-marital activities with her former suitor. It was obvious to the presiding judge that she was a biased witness and was only worthy of minimal credibility. Her testimony was given due consideration. At most, the testimony of this witness was to the effect that a former boyfriend took prosecutrix to New York to see her pregnant daughter who was in an automobile accident. If true, this appeared to the trial judge to be an emergency situation rather than a lovers' rendezvous. Conversely, it was felt that the prosecutrix attempted to tell a truthful story which was honest and believable.

As has been recognized on many occasions, a fundamental rule of the common law is that a husband owes a legal duty to make reasonable provisions for the support of his wife, such being in relation to the husband's means and the parties' station in life: Commonwealth v. Berfield, 160 Pa. Superior Ct. 438 (1947); See also Commonwealth ex rel. Deutsch v. Deutsch, 347 Pa. 66 (1943), and Gimbels v. Farkas, 44 D. & C. 2d 791 (1968).

In the instant case, the parties to this action have been married for a short period of time. Cohabitation was sporadic, at best. This is not the usual case of a long-term marriage which has run aground. However, with the marriage vows, appellant took upon himself the duty to support his wife.

Although this was a separation by agreement, the hearing judge was more than satisfied from the testimony presented at the hearing that the prosecutrix had legal grounds for living separate and apart from her husband. He, in effect, turned her "out of doors" when there was no justification for him to do so.

The amount of support that a husband must pro-

vide his spouse is largely within the discretion of the hearing judge: Commonwealth ex rel. Dachis v. Dachis, 203 Pa. Superior Ct. 249 (1964); Commonwealth ex rel. Edelman v. Edelman, 193 Pa. Superior Ct. 570 (1960); Commonwealth ex rel. Schofield v. Schofield, 173 Pa. Superior Ct. 631 (1953).

Although confronted by sometimes exaggerated stories of their plight by the parties, the trial judge is called upon to sift through the facts of each particular case to ascertain the usual and proper financial needs of the two parties involved: Commonwealth v. Miller, 202 Pa. Superior Ct. 573 (1964). See also Commonwealth ex rel. Gitman v. Gitman, 428 Pa. 387 (1967).

In the usual support hearing situation, it is the standard of living to which the parties have become accustomed that lends a guideline to the calculation of a proper support order, keeping in mind the husband's income and assets. See Gitman, supra.

It was brought out in direct testimony that appellant caused the prosecutrix to incur medical expenses and caused her to leave one place of employment in an attempt to remove herself from the pressures of unsatisfactory work brought about by defendant's actions. Financial troubles were also incurred by the prosecutrix as a result of not having a medical plan in force when her son required medical treatment. This court is well aware that the law does not require the husband to support his stepchild, and only considered testimony of the prosecutrix regarding medical bills and other expenses regarding said child for the purpose of arriving at the net amount of her earnings that she has for her own use.

Our courts have, on numerous occasions, held that the fact that the wife is employed and has separate earnings does not relieve the husband of his duty to

support her, if sufficient financial ability of the husband is disclosed: Commonwealth ex rel. Litz v. Litz, 190 Pa. Superior Ct. 310 (1959). Legal cause justifying a husband's refusal to support his wife would have to be such as to amount to grounds for divorce against the wife: Commonwealth ex rel. Mandell v. Mandell, 184 Pa. Superior Ct. 179, 181 (1957) citing Commonwealth v. Cooper, 183 Pa. Superior Ct. 36 (1956) and Commonwealth v. Sgarlat, 180 Pa. Superior Ct. 638 (1956).

The thrust of defendant's defense was that he had no money to "throw away" at week's end.

Considering the foregoing, this court entered an order of support for prosecutrix and against appellant in the amount of $25 per week.