488 A.2d 264

**Patricia J. YOUNG, Appellant,**

v.

**John M. YOUNG and Julie Young, his wife, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1984.[*]

Decided Feb. 15, 1985.

[*] This opinion was reassigned to the writer on January 31, 1985.

Richard J. Shiroff, Northampton County, Easton, for appellant.

Nicholas Noel, III, Lehigh County, Bethleham, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant Patricia Young and appellee John Young were divorced by the Superior Court of New Jersey on July 13, 1977, after twenty-nine years of marriage. During the marriage, appellee had worked as a police officer for the City of Easton, Pennsylvania, and certain amounts of mon-

ey had been deducted from his pay and deposited into the police pension fund established by the city. On July 10, 1978, the New Jersey court entered an order distributing the assets of the parties and providing, inter alia, for payment to appellant of one-half the amount which appellee receives from the police pension fund.[1] On October 30, 1978, the New Jersey court found appellee to be in arrears in his pension fund payments to appellant in the amount of $1,145.55 and held him in contempt of court. Subsequently, on April 29, 1980, the New Jersey court entered a judgment against appellee in the amount of $6,055.55.[2] On June 18, 1980, this judgment was certified in the Court of Common Pleas of Northampton County, and on November 4, 1980, the New Jersey orders regarding the parties' divorce and property distribution were "adopted" by the Court of Common Pleas.[3] The Court of Common Pleas then denied appellee's petition to modify the property distribution.[4]

On June 8, 1981, appellant filed a petition seeking to "freeze" appellee's pension fund payments for her benefit. The Court of Common Pleas treated this as a request "to attach pension payments" and denied the petition. On appeal, the Superior Court affirmed. *Young v. Young*, 320

1. Essentially, the distribution order provided for the transfer of appellee's interest in the marital home to appellant; payment by appellee to appellant of one-half of all police pension fund payments received by him, retroactive to March 1, 1977; and retention by each party of all other property already in his or her possession. The order also provided "that the plaintiff [appellee] make no further support payments to defendant [appellant], however, this does not prejudice the defendant's right to apply to this Court for further support by way of alimony should there be a material change in the economic status of the respective parties."

2. At the hearing in this case, appellee testified that he was represented by counsel at all the New Jersey proceedings, that he was aware of the content of both the divorce and the distribution orders, and that none of the four orders was ever appealed.

3. Although the contempt order of October 30, 1978 was never certified in a Pennsylvania court, a copy of that order was admitted into evidence during the hearing before the Court of Common Pleas.

4. Also on this date, appellee Julie Young, appellee John Young's present wife, was dismissed as a party to this proceeding.

Pa.Super. 269, 467 A.2d 33 (1983). We granted allocatur and we now reverse.

■ Since this case involves only questions of law, we are not bound by the conclusions of the courts below: "[c]onclusions of law are always subject to our review on appeal...." *Fiore v. Fiore*, 405 Pa. 303, 305, 174 A.2d 858, 859 (1961). Accordingly, we may fully consider the questions of statutory interpretation presented for our review. *See Commonwealth, Higher Education Assistance Agency v. Abington Memorial Hospital*, 478 Pa. 514, 521, 387 A.2d 440, 443 (1978) (opinion in support of affirmance) (citation omitted) ("Undoubtedly questions of statutory interpretation ... are for the courts to resolve....'").

The pension fund from which appellee draws his pension was created by the City of Easton pursuant to provisions of the Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 35101 *et seq.*[5] That act provides that

> The compensation or pension herein mentioned shall not be subject to attachment or execution, and shall be pay-

---

**5.** The portions of the act which are involved in this case are found in Article XLIII, entitled Pensions, 53 P.S. § 39301 *et seq.*

The opinions of both courts below erroneously cite the Pennsylvania Municipal Retirement Law, 53 P.S. § 881.101 *et seq.*, in connection with appellee's pension. The City of Easton has provided by ordinance that

> (a) As of the effective date of this section, membership in the Police Pension Fund [created pursuant to 53 P.S. § 39301 *et seq.*] shall be closed and all policemen not members as of that date shall be ineligible for membership. Policemen hired on or after the effective date of this section shall be bound by the provisions of the Pennsylvania Municipal Retirement Law [53 P.S. § 881.101 *et seq.*], as set forth hereafter.

Ordinance 2476, passed December 13, 1978.

In this case, the record reveals that appellee retired from the Easton police force in February, 1976, more than two years before the passage of Ordinance 2476. His pension is, therefore, governed by 53 P.S. § 39301 *et seq.*, and the provisions of the Pennsylvania Municipal Retirement Law, 53 P.S. § 881.101 *et seq.* have no application to this matter.

able only to the beneficiary designated, and shall not be subject to assignment or transfer.

53 P.S. § 39351.[6]

■ The only issue presented in this appeal is whether the funds in appellee's police pension are subject to attachment.[7] More specifically, we must decide whether a spouse—either present or former—who seeks to enforce orders, whose essential purpose is to provide support for that spouse, may attach the police pension of the other spouse—either present or former.[8]

6. Pennsylvania law governs the enforcement of the judgments involved in this case. *See, e.g.,* Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. § 4306(b) (formerly 12 P.S. § 922) ("A copy of any foreign judgment ... may be filed in the office of the clerk of any court of common pleas of this Commonwealth.... A judgment so filed ... shall have the same effect and be subject to the same procedures ... as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner."); Revised Uniform Reciprocal Enforcement of Support Act (1968), 42 Pa.C.S.A. § 6780(a) (formerly 62 P.S. § 2043–42) ("Upon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this Commonwealth. It has the same effect and is subject to the same procedures ... as a support order of this Commonwealth and may be enforced and satisfied in like manner.").

7. Appellant's petition was filed, purportedly pursuant to provisions of the Divorce Code, Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101 *et seq.* In addition, the courts below relied upon various portions of the Divorce Code in their dispositions of this case. It is clear, however, that the Divorce Code has no application to this proceeding. Section 103 of the Code provides that "[t]he provisions of this act shall not apply to any case in which a decree has been rendered prior to the effective date of the act." 23 P.S. § 103. Since both the divorce decree and the property distribution order in this case were entered prior to the effective date of the Divorce Code in 1980, the Code does not apply to this case.

It is not clear from either appellant's petition of June 8, 1981 or the opinions of the courts below whether appellant is seeking to execute on the $6,055.55 judgment or to enforce the property distribution order prospectively. We are of the view that both of these situations are properly presented for our consideration.

8. The distribution to appellant of one-half of appellee's pension payments, although comprising part of the court-ordered property distribution between the parties, was essentially a means of ensuring support for appellant. We base this conclusion, in part, upon the language of the New Jersey court's order:

FURTHER ORDERED that the plaintiff [appellee] make no *further* support payments to defendant [appellant], however, this does not prejudice the defendant's right to apply to this Court for *further*

In defining the scope of the exemption from attachment granted by 53 P.S. § 39351, we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501 *et seq.* That act provides that the object of all statutory construction is to ascertain the intent of the legislature, and that the legislature's intent may be ascertained by considering the necessity for the statute, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation; that the legislature does not intend a result that is unreasonable, and intends to favor the public interest over any private interest; and that statutes such as 53 P.S. § 39351 "shall be liberally construed to effect their objects and to promote justice." 1 Pa.C.S.A. §§ 1921(a), (c)(1), (3), (4), (6); 1922(1), (5); 1928(c).

■ In accordance with the provisions of the Statutory Construction Act, we note initially that pensions created pursuant to 53 P.S. § 39301, such as the one in this case,

support by way of alimony should there be a material change in the economic status of the respective parties.
(Emphasis added.) In addition, we note that under the New Jersey statute which allows courts hearing divorce cases to order the payment of alimony and to equitably divide the parties' property, the New Jersey courts have recognized that equitable distribution, as well as alimony, may be used to provide for the support needs of the spouses. *See* N.J.S.A. 2A:34–23; *Lepis v. Lepis,* 83 N.J. 139, 416 A.2d 45, 53 (1980) ("The power to distribute property equitably should be exercised to relieve the strain of total reliance on support payments for financial security.... Courts have refused to consider an alimony award in isolation; the earnings received from investments funded by an equitable distribution award have been considered when determining the adequacy of the dependent spouse's income."); *Rothman v. Rothman,* 65 N.J. 219, 320 A.2d 496, 501 (1974) ("The statute we are considering [N.J.S.A. 2A:34–23] authorizes the courts, upon divorce, to divide marital assets equitably between the spouses. The public policy sought to be served is at least twofold. Hitherto future financial support for a divorced wife has been available only by grant of alimony. Such support has always been inherently precarious. It ceases upon the death of the former husband and will cease or falter upon his experiencing financial misfortune disabling him from continuing his regular payments. This may result in serious misfortune to the wife and in some cases will compel her to become a public charge. An allocation of property to the wife at the time of divorce is at least some protection against such an eventuality."). *See also Woliner v. Woliner,* 132 N.J.Super. 216, 333 A.2d 283 (App.Div.), *aff'd* 68 N.J. 324, 344 A.2d 781 (1975).

exist for the benefit of retired or disabled police officers, their surviving spouses, and their children under the age of eighteen. *See* 53 P.S. § 39301. Thus, the purpose of the exemption statute, 53 P.S. § 39351, is to protect pension funds from the claims of creditors, for the benefit of police officers and their families.[9] *Cf. Resolute Insurance Company v. Pennington,* 423 Pa. 472, 477, 224 A.2d 757, 760 (1966) ("The rationale behind laws exempting insurance proceeds from the claims of creditors is to encourage individuals to provide for their families and dependents."); *Commonwealth ex rel. Deutsch v. Deutsch,* 347 Pa. 66, 68, 31 A.2d 526, 527 (1943) ("[T]he exemption of wages from seizure by creditors was designed largely for the very purpose of supplying the wants of wife and children...."). *See also Fowler v. Fowler,* 116 N.H. 446, 362 A.2d 204, 205, 93 A.L.R.3d 705 (1976) ("Retirement funds ... are created for the protection of not only the employee, but for the protection of his family as well. Hence, the provisions exempting assignments and attachments contained therein are to relieve the person exempted from the pressure of claims that are hostile to his and to his dependents' essential needs.").

In addition, we note that Pennsylvania has long had a policy giving priority to the enforcement of support orders. Both the legislature and this Court have created procedures specifically designed to accomplish this policy.[10]

---

**9.** Despite the clearly recognized purpose of exemption statutes such as 53 P.S. § 39351, a survey of the law in this area reveals that courts are split as to whether or not a pension which is subject to such an exemption may nevertheless be attached in order to satisfy an order for support. *Compare Mahone v. Mahone,* 213 Kan. 346, 517 P.2d 131 (1973) (allowing attachment despite exemption statute accomplishes purpose of exemption statute and furthers public policy which protects child's right to receive support from his or her parent), *with Bresnan v. Bresnan,* 42 Or.App. 739, 601 P.2d 851 (1979) *and Fowler v. Fowler,* 116 N.H. 446, 362 A.2d 204, 93 A.L.R.3d 705 (1976) (attachment not allowed because of exemption statute). *See also* Annot., 93 A.L.R.3d 711 (1979).

**10.** The fact that the type of support at issue in this case—equitable distribution ordered after the entry of a decree of divorce, in the nature of alimony—did not exist in Pennsylvania at the time the New

*See, e.g.,* 48 P.S. § 136 (execution allowed to enforce orders for support between spouses despite existence of any exemption law); Pa.R.C.P. 1910.22 (wage attachment allowed to enforce orders for support).

■ The purposes of the statute creating appellee's pension and the exemption statute enacted to protect that pension, as well as Pennsylvania's policy favoring the enforcement of support orders, are clear. In furtherance of these purposes, therefore, we hold that although the legislature generally intended to protect pensions from attachment when it enacted 53 P.S. § 39351, a police pension may nevertheless be attached in order to satisfy an order whose purpose is to enforce an obligation of support.[11]

Jersey order was entered does not make that support any less deserving of recognition under Pennsylvania's policy favoring the enforcement of support obligations. Since the order sought to be enforced in this case was entered in New Jersey pursuant to New Jersey law by a New Jersey court whose jurisdiction over the parties and the subject matter remains unquestioned, it is entitled to full faith and credit in Pennsylvania. *See Nevada v. Hall,* 440 U.S. 410, 421, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416 (1979); *Aldrich v. Aldrich,* 378 U.S. 540, 543, 84 S.Ct. 1687, 1689, 12 L.Ed.2d 1020 (1964).

We note in passing, however, that since 1980, the Divorce Code has allowed courts in Pennsylvania to order alimony in appropriate cases. *See* 23 P.S. § 501.

11. This holding applies equally to judgments for arrearages and to orders requiring future payments when there are already substantial arrearages. Once there has been a demonstrated lack of intention of making future payments, we see no reason to force an individual who needs support to obtain a new judgment and commence enforcement proceedings for each missed payment. Such a requirement would be especially harsh in a case such as this; the parties' briefs reveal that appellee now lives in Florida, and we would impose an unnecessary burden on appellant, who remains in Pennsylvania, were we to hold that she must commence enforcement proceedings in Florida every month in order to reach the pension payments once they have been sent to appellee. *See Commonwealth ex rel. Magrini v. Magrini,* 263 Pa.Super. 366, 371, 398 A.2d 179, 181–82 (1979) ("Appellant [the garnishee] argues that we need not stretch our construction of the Act [40 P.S. § 515] (if indeed we do) because the wife is not left out in the cold; her remedy is to execute on the funds after they have reached her husband's hands. We agree that that remedy is always available to the wife. However, more often than not, that 'remedy' is nothing more than the right to file suit every month to enforce the support order. That point is especially noteworthy here where substantial arrearages are present. We believe our interpretation of the statutes

The Superior Court has reached the same conclusion in two cases with facts similar to the facts of this case. Most recently, in *Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 470 A.2d 981 (1984), petition for allowance of appeal denied (May 7, 1984), the Superior Court had to consider whether a private pension fund protected by the exemption found in 42 Pa.C.S.A. § 8124(b) could be attached in order to satisfy a judgment for arrearages arising from the former husband's obligation to support his former wife and their two children. The Superior Court concluded:

> If the purpose of exemption clauses, like the one in [42 Pa.C.S.A.] section 8124(b), is to prevent the dissipation of one's pension so that he can support his family, then to prevent an attachment, whose purpose is to discharge the same obligation that the exemption clause was created to protect, would be unjust.... Accordingly, we hold that in this instance, in an effort to satisfy familial support obligations, the husband's share of the professional corporation's pension and profit sharing plans are not exempt from attachment under 42 Pa.C.S.A. § 8124(b).

323 Pa.Superior Ct. 417, 470 A.2d at 988.

In another case, the Superior Court was asked to decide whether a husband's private pension, which was protected by an exemption provided by 40 P.S. § 515, could be attached in order to satisfy the husband's obligation to support his wife. *Commonwealth ex rel. Magrini v. Magrini*, 263 Pa.Super. 366, 398 A.2d 179 (1979). The Superior Court held that the pension could be attached, stating:

> Clearly, these types of statutes were specifically drawn to protect the beneficiary's family so he (or she) could not voluntarily or by means of creditor judgments, dissipate the assets and leave his family without a means of support. In view of this, we decline to interpret the Act

[allowing attachment] more closely conforms to the strong public policy requiring the husband to support his wife.").

of 1917 [40 P.S. § 515] ... to protect a delinquent husband's pension funds from attachment for support.

263 Pa.Superior Ct. 370–371, 398 A.2d at 181.[12]

The additional factors set forth in the Statutory Construction Act also support this holding. First, we note that a family loses its ability to spend a portion of its income when that income is deferred and placed in a pension. It would be terribly unfair to read an exemption statute, which was created to protect a pension for the benefit of a retired employee's family, in such a way that the exemption would bar children or a former spouse from receiving support from the very fund created for their benefit, and would once again deny them the benefits of the income they sacrificed to a pension years before. We do not believe that the legislature intended to create such an unreasonable result when it enacted 53 P.S. § 39351.

Further, by interpreting 53 P.S. § 39351 to allow the attachment of pensions in cases such as this, we favor the public interest over private interests. Our interpretation forces individuals to be responsible for their obligations and does not permit them to hide behind the shield of a statutory exemption. It also protects the public from having to assume the responsibility of supporting family members when individuals refuse to comply with court orders to provide support.

12. The Superior Court has held that public pensions may not be attached because of the public policy that public funds should be free from the uncertainties of private disputes. *See Commonwealth ex rel. Cerminara v. Cerminara,* 239 Pa.Super. 111, 362 A.2d 1011 (1976); *Commonwealth v. Mooney,* 172 Pa.Super. 30, 92 A.2d 258 (1952).

However, we think that the interest in ensuring the enforcement of orders whose purpose is to provide support far outweighs the interest of the government in freeing itself from the annoyance of complying with attachments against public pensions. *Cf. Commonwealth ex rel. Deutsch v. Deutsch, supra* ("[S]olicitude for the convenience of employers must give way to the paramount need of society to protect family life and the social institution of marriage."). We also fail to see the justification for treating public and private pensions differently, since the interest in making sure that court-ordered support is available must take precedence over any administrative difficulties which may differentiate the two types of pensions. To the extent that the Superior Court has relied on this distinction in its decisions, we disapprove of those decisions.

Finally, our interpretation of 53 P.S. § 39351 promotes justice between the parties in this case. Appellant has been entitled to receive one-half of appellee's pension payments since 1977 as part of the equitable distribution of the parties' assets; yet to date, appellant has received none of the funds to which she is entitled. Appellee has no right to ignore a court order, and we will not permit him to do so any longer.

The order of the Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.

ZAPPALA, J., filed a dissenting opinion in which NIX, C.J., and FLAHERTY, J., joined.

ZAPPALA, Justice, dissenting.

I dissent.

Legislative interpretation is controlled by the Statutory Construction Act[1] which sets forth the polestar for determining legislative intent:

> (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S.A. § 1921(b). *See In re Estate of Fox*, 494 Pa. 584, 431 A.2d 1008 (1981); *Black v. Billy Penn Corp.*, 72 Pa. Cmwlth. 628, 457 A.2d 192 (1983); *Shestack v. General Braddock Area School District*, 63 Pa.Cmwlth. 204, 437 A.2d 1059 (1981).

The statute in question states:

> The compensation or pension herein mentioned *shall not be subject to attachment or execution,* and shall be payable only to the beneficiary designated, and shall not be subject to assignment or transfer. (Emphasis added).

53 P.S. § 39351.

The majority creates an ambiguity in this statute by its interpretation of the enforcement provisions of our support

1. Act of December 6, 1972, P.L. 1339, 1 Pa.C.S.A. § 1501 et seq.

statutes (*See* 48 P.S. § 136 and Pa.R.Civ.P. 1910.22) and exemption statute (*See* 42 Pa.C.S.A. § 8124(b)). Nothing in these provisions creates. such an ambiguity. Section 136 specifically provides for attachment of trusts, not otherwise subject to attachment, while Rule 1910.22 speaks generally of wages, salaries and commissions. Likewise, I take exception to the majority's reliance upon 42 Pa.C.S.A. § 8124(b), in that section 8124(b) is as explicit as § 39351 of the Third Class City Code, in exempting pension plans from attachment or execution. For this reason, I would not adopt the reasoning of the Superior Court in *Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 470 A.2d 981 (1984) anymore than I agree with the majority in the present case.

Thus, I find no ambiguity, either within the pension statute itself or in conjunction with the support statutes or exemption statutes, which permits the majority to undertake the task of determining the "spirit" of the law in derogation of its obvious meaning.[2]

NIX, C.J., and FLAHERTY, J., join in this dissenting opinion.

**2.** The majority correctly holds that the Divorce Code, Act of April 2, 1980, P.L. 63 No. 26, 23 P.S. § 101 et seq., is inapplicable to this appeal. The views which I have expressed today should not be interpreted as necessarily being applicable if the Divorce Code applied.