## Stinner v. Stinner

*Jackson M. Sigmon*, for plaintiff.
*Alfred P. Antonelli*, for defendant.
*Kathleen Mills*, for plan administrator.

FREEDBERG, *J.*, January 20, 1986—This matter is before the court on plaintiff's petition to enforce a writ of execution to garnish defendant's pension

plan. The facts leading up to this petition are essentially undisputed. On June 16, 1977, the parties entered a property settlement agreement in anticipation of divorce, which was obtained on September 6, 1977. Pursuant to the written agreement, defendant was obligated to pay to plaintiff as alimony, $250 per week for the remainder of plaintiff's natural life or until such time as she should remarry. On May 21, 1979, defendant discontinued making payments pursuant to the agreement. On February 5, 1980, the court entered summary judgment in favor of plaintiff in her action to enforce the agreement, and offered defendant to specifically perform his obligation to make the weekly payments. This order was affirmed by the Superior Court on November 30, 1981. When defendant continued to withhold weekly payments, plaintiff brought proceedings to attach both defendant's person and his wages for failure to obey the court's order. On October 28, 1980, the court dismissed her petition, holding that "a court of equity cannot enforce its decree for the payment of money due under a separation agreement by attachment of the person of the defaulting husband," and that plaintiff was not entitled to attach her former husband's wages because "this matter involves a contractual claim rather than an action or proceedings for support or for board for four weeks or less. Judicial Code §8127."

In March 1981, plaintiff garnished a checking account held jointly by Mr. Stinner and his second wife. Defendant's objections to the garnishment were denied by this court, which held that defendant's direct deposit of his pension check into the account, which was held as entireties property, was a fraudulent conveyance. The Superior Court affirmed on June 4, 1982.

, Plaintiff now seeks to garnish defendant's pension plan, and to that end, on July 28, 1985, served two writs of execution on the pension plan of Bethlehem Steel Corporation. On August 5, 1985, plaintiff's attorney was notified by the pension plan administrator that he would not comply with the writ of execution because the writ was not a "qualified domestic relations order" under section 206(d) of the Employee Retirement Income Security Act of 1974, ERISA, as amended by the Retirement Equity Act of 1984, REA. 29 U.S.C. §1001 et seq.

The sole issue before the court is whether plaintiff's writ of execution, or the court order upon which it is based, can be treated as a "qualified domestic relations order" so as to allow plaintiff to garnish defendant's pension plan. After careful consideration of the briefs of counsel and the law, we hold that it cannot, and therefore deny plaintiff's petition for the reasons outlined below.

Section 206(d) of ERISA contains a broad prohibition against assignments or alienation of pension plan benefits. 29 U.S.C. §1056(d). In addition, section 514 of ERISA provides that ERISA shall supersede any and all state laws insofar as they relate to any employee benefit plan. 29 U.S.C. §1144. Prior to the enactment of REA, a large number of jurisdictions including Pennsylvania, through judicial decisions, recognized an implied exception to ERISA's alienation and assignment prohibition for family support and alimony obligations. In recognition of the need to define and codify the judicially created exceptions, Congress enacted REA, which amended ERISA by establishing an exception to ERISA's prohibition against alienation and assignment of pension plan benefits known as the "qualified domestic relations order." Thus, the act provides:

"(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
. . .

(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

(B) For purposes of this paragraph—

(i) the term "qualified domestic relations order" means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, . . .

. . . .29 U.S.C. §1056(d) (3)

Plaintiff, while admitting that the court's order of February 5, 1980, does not meet the requirements set forth for a *qualified* domestic relations order," argues that the 1980 order does meet the requirements set forth for a "domestic relations order" and therefore is governed by REA's transitional provisions which provide:

"(d) AMENDMENTS RELATING TO ASSIGNMENTS IN DIVORCE, ETC., PROCEEDINGS.— The amendments made by sections 104 and 204 shall take effect on January 1, 1985, except that in the case of a domestic relations order entered before such date, the plan administrator—

(1) shall treat such order as a qualified domestic relations order if such administrator is paying benefits pursuant to such order of such date, and

(2) *may treat any other such order entered before such date as a qualified domestic relations order even if such order does not meet the requirements of such amendments.* (Emphasis added). 29 U.S.C. §1001.

Plaintiff argues that the 1980 order meets the requirements for a "domestic relations order" and therefore this exception permits the plan administrator to treat the order as a "qualified domestic relations order." Plaintiff then argues that the purposes of ERISA and equity demand that the plan administrator exercise his discretion in favor of plaintiff/wife.[1]

Defendant and the plan administrator oppose the petition on several grounds, but chiefly argue that the exception is not applicable to the instant order because the 1980 court order does not meet the requirements of a "domestic relations order." We agree.

"(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—

(I) relates to the provisions of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law). 29 U.S.C. §1056(d)(3).

---

1. Since we have decided that this exception does not apply to the instant order, we do not reach the issue of whether this court has authority to order the plan administrator to exercise his discretion in favor of the plaintiff.

While we agree with plaintiff that the 1980 order is an order which relates to the provision of alimony payments, the order, to be considered a "domestic relations order," must also be made "pursuant to a State domestic relations law."

Prior to the Divorce Code of 1980, the domestic relations laws of Pennsylvania expressly limited alimony, in cases of absolute divorce, to those situations where dependent spouse was insane. 23 P.S. §45. The 1977 property settlement agreement therefore had no basis in the domestic relations laws of Pennsylvania, but rather was entered into pursuant to general principles of contract law. Similarly, the action to enforce the agreement was brought in assumpsit, and the resulting court order was an order affirming a contractual obligation and reducing that obligation to judgment rather than an order to pay support.[2]

The instant case is indistinguishable from the recent Superior Court case of Hollman v. Hollman, No. 707 Pittsburgh, slip. opinion (Pa. Super. En Banc, November 1, 1985) (Tamilia, J.). In Hollman, plaintiff sought to garnish her ex-husband's pension plan to collect on a 1982 judgment for arrearages which had accumulated because of his failure to make required payments pursuant to a 1969 agreement for support. The Superior Court held

2. In an earlier action where this court denied plaintiff's petition to attach defendant's wages, the court expressly held that "This matter involves a contractual claim." Stinner v. Stinner, October 28, 1980, slip. op. pg. 5 (Northampton County Common Pleas, Freedberg, J.). See also, Schmitz v. Schmitz, 305 Pa. Super. 328, 451 A.2d 555, 557 (1982)("Although a separation agreement providing support for a spouse will continue subsequent to a divorce the obligation is based on a contract"); Hollman v. Hollman, No. 707 slip. op. (Pa. Super., November 1, 1985)(Tamilia, J.).

that a private support agreement, as opposed to a court order for support or a private support agreement which is incorporated into a divorce decree, is no different from any other contract, and therefore the wife's petition to garnish her ex-husband's pension in contravention to 42 Pa. C.S. §8124(b), must be denied, as would be a similar petition by any other creditor.

Plaintiff argues that this result is inconsistent with the purpose of ERISA to prevent dissipation of a pension so that the recipient can support his family and himself. Nevertheless, we are constrained to apply the law as it is plainly written. We are similarly mindful of the recent Pennsylvania Supreme Court case wherein the court held that a police pension may be attached in order to satisfy an order the purpose of which is to enforce an obligation of support, notwithstanding a prohibition against assignment and alienation similar to that in the instant case. Young v. Young, 507 Pa. 40, 488 A.2d 264 (1985). The Young court, guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §1501 et seq., which provides that statutes shall not be interpreted in such a way so as to defeat the very purpose of their enactment, read in an exception against the anti-alienation provision of 53 P.S. §39351 to allow the attachment of police pensions in family support cases, where the statute provided for no such exception.

The federal statute in the case at bar differs significantly in that, by virtue of REA, ERISA now specifically provides for an exception to the anti-alienation provisions for family support orders. Plaintiff's argument, to the effect that the legislative intent of REA was to incorporate all of the pre-REA case law which created the implied exception to the anti-alienation provision, flies in the face of a plainly

worded statute. As aforesaid, Congress recognized the need to codify and define the judicially created exception, and in so doing made a conscious decision to include some involuntary attachments and to exclude others, such as that sought by plaintiff in this case.[3]

Undeniably, this holding further restricts plaintiff's already limited remedies in her attempt to enforce the 1980 court order. Nevertheless, while defendant's real estate is encumbered, and the remedies provided for in the Divorce Code of 1980 are not available to plaintiff,[4] in accordance with the opinion of the Superior Court in this matter (slip. opinion June 4, 1982, Hoffman, J.) plaintiff may execute on the pension funds as soon as defendant receives them.

Lastly, plaintiff's petition also contains a request that the pension plan benefits be placed in an escrow account pending resolution of this issue, including the time of any possible appeals to this decision. Plaintiff's request is premised on the escrow provision of REA which provides:

"(H) (i) During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall segregate in a separate account in the plan or in an es-

3. We note also that the Hollman court distinguished the Young case in that the order sought to be enforced in Young was a New Jersey court order for support and alimony made pursuant to New Jersey's domestic relations laws rather than a private agreement for support as in Hollman and the instant case.

4. Section 103 of the Divorce Code provides that the Divorce Code does not affect any marital agreement executed prior to the effective date of the act.

crow account the amounts which would have been payable to the alternate payee during any such period if the order had been determined to be a qualified domestic relations order." 29 U.S.C. §1056(d)(3).

The above provision is applicable only where there is a dispute over whether the "domestic relations order" in question is a "qualified domestic relations order." Since we have held that plaintiff does not possess a domestic relations order the provision is inapplicable, and we deny plaintiff's request.

Wherefore, we enter the following

## ORDER OF COURT

And now, this January 20, 1986, plaintiff's petition for writ of execution to garnish defendant's pension plan is hereby denied and dismissed.