**The 1975 SALARIED RETIREMENT PLAN FOR ELIGIBLE EMPLOYEES OF CRUCIBLE, INC., an ERISA plan; the Colt Industries Operating Corporation Severance Plan for Salaried, Nonunion Employees, an ERISA plan, the Retirement Committee of Coltec Industries, Inc., as Administrator of the 1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. and the Colt Industries Operating Corporation**

Severance Plan for Salaried, Nonunion Employees, the Pension Plan for Collectively Bargained Employees of Midland Operations of Crucible, Inc., an ERISA plan, the Supplemental Unemployment Benefit Plan for Collectively Bargained Employees of Midland Operations of Crucible, Inc., an ERISA plan, the Severance Allowance Plan for the Collectively Bargained Employees of Midland Operations of Crucible, Inc., an ERISA plan, and Coltec Industries, Inc., as Administrator of the Pension Plan for Collectively Bargained Employees of Midland Operations of Crucible, Inc., the Supplemental Unemployment Benefit Plan for Collectively Bargained Employees of Midland Operations of Crucible, Inc., and The Severance Allowance Plan for the Collectively Bargained Employees of Midland Operations of Crucible, Inc., Appellants

v.

David A. NOBERS, Robert R. Campbell, Jr., Gasper P. Porto, and Gary T. Weekly.

No. 91–3426.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1991.

Decided July 6, 1992.

William H. Powderly, III (argued), Paula E. Ganz, Joan C. Zangrilli, Jones, Day, Reavis & Pogue, Pittsburgh, Pa., for appellants.

Gregory Gleason (argued), Hough & Gleason, P.C., Pittsburgh, Pa., for appellees.

Before: BECKER, GREENBERG, and ALITO, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal requires us to construe the Anti–Injunction Act, 28 U.S.C. § 2283 (1988), in the context of the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1992). The plaintiff-appellants, five plans for the benefit of employees of Crucible, Inc., seek to enjoin the appellees, four employees whom Crucible laid off, from prosecuting a contract action against Crucible and its parent company, Colt Industries, Inc., in Pennsylvania state court. The district court for the Western District of Pennsylvania denied the requested injunction.

The plans allege that the state court suit will interfere with the performance of their duties under ERISA. Contending that the state court suit "relates to" ERISA plans because the state court will have to construe the plans in determining liability, the plans submit that, under sections 502(e)(1) and 514(a) of ERISA, 29 U.S.C. §§ 1132(e)(1), 1144(a) (1988), the state court action is preempted and the case is subject to exclusive federal jurisdiction.

Under the Anti–Injunction Act, a federal court may grant injunctions to stay state court proceedings only when "expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (1988). The plans assert that their claim falls under all three exceptions. They contend that section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), "expressly authorize[s]" injunctions for violations of ERISA, including violations of its supersedure provisions. They also argue that an injunction is necessary in aid of the federal court's (exclusive) jurisdiction, and to protect the district court's judgment in favor

of Crucible and Colt in an earlier suit by the employees.

Although we agree with the plans that the state court suit is preempted and that the claim, if brought under ERISA, would be subject to exclusive federal jurisdiction, we conclude that the plans' request falls under none of the three exceptions in the Anti–Injunction Act. We will therefore affirm the judgment of the district court denying the injunction.

## I. FACTS AND PROCEDURAL HISTORY

The appellees claim to represent a class of former employees of Crucible's Midland, Pennsylvania steel plant who were promoted from positions in Crucible's collective bargaining unit into salaried, non-union positions. Around 1980, Crucible began to have economic troubles and instituted cutbacks and layoffs. During this period, some salaried employees were demoted back to union positions, but the putative class members were not demoted, and were eventually laid off in 1982 as salaried employees. The appellees contend that they had a contractual right to be demoted from managerial and supervisory positions back to the bargaining unit and that if they had been properly demoted, they would have received substantially greater pension and related benefits than those to which they are entitled as salaried employees. Protracted litigation has followed their layoff.

The appellees first brought Civil Action No. 82–1846 in the district court for the Western District of Pennsylvania against Crucible, Colt, the steelworkers' union, and the administrator of the union's pension plans. The appellees claimed that the collective bargaining agreement required Crucible to demote them and lay them off as union employees rather than as salaried employees, and that the union breached its duty of fair representation by failing to file their grievance. This suit (*"Nobers I"*) was a hybrid class action based on section 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1988). The district court certified the class pursuant to Federal Rule of Civil Procedure ("FRCP") 23, but granted summary judgment against the appellees (plaintiffs there) on the ground that they had neither an express nor an implied right under the collective bargaining agreement to be terminated as union employees.[1] This court affirmed without opinion. *Nobers I*, 722 F.2d 733 (3d Cir.1983).

Not fazed by their loss in federal court, in 1984 the appellees brought Action No. 843–1984 in the Court of Common Pleas of Beaver County, Pennsylvania. This class action suit (*"Nobers II"*), which is still pending, asserts claims against Crucible and Colt for breach of and interference with alleged express and implied contracts of employment. The appellees allege a right to return to the bargaining unit and to be terminated as union employees rather than as salaried employees. They seek damages equivalent to the unemployment, pension, and insurance benefits available to bargaining unit employees.

Crucible and Colt attempted to remove *Nobers II* to federal district court, but the district court remanded the case to state court on the grounds that neither diversity jurisdiction nor ancillary jurisdiction supported original federal jurisdiction. *Nobers v. Crucible, Inc.*, 602 F.Supp. 703 (W.D.Pa. 1985). After remand, Colt and Crucible took another tack to prevent the state court from acting on *Nobers II:* they brought Civil Action No. 85–563 in federal court, seeking to enjoin *Nobers II* on the ground that it was barred by the res judicata effect of *Nobers I*. The district court denied relief on the ground that the face of the *Nobers II* complaint made no strong and unequivocal showing of relitigation, as required by the case law under the Anti–Injunction Act, 28 U.S.C. § 2283. This court affirmed without opinion. *Colt Industries v. Nobers*, 787 F.2d 581 (3d Cir. 1986).

---

**1.** The court also granted summary judgment on the plaintiffs' claim of general "violations and breaches of plaintiffs' rights." The court dismissed their ERISA claims for failure to join the proper defendants and to exhaust administrative remedies.

The Beaver County Court of Common Pleas resumed its proceedings in *Nobers II*, and in 1987 dismissed the action upon the motion of Colt and Crucible, holding that ERISA preempted the appellees' state law claims. On appeal, however, the Pennsylvania Superior Court reversed, *Nobers v. Crucible, Inc.*, 376 Pa.Super. 156, 545 A.2d 367 (1988), basing its ruling on *Shaw v. Westinghouse Electric Corp.*, 276 Pa.Super. 220, 419 A.2d 175 (1980), and finding the association between the *Nobers II* contractual allegations and the ERISA plans to be "tangential at best," 545 A.2d at 371. The Pennsylvania Supreme Court denied review. 522 Pa. 578, 559 A.2d 39 (1989).

After the Pennsylvania Supreme Court ruling, Colt and Crucible returned to federal district court, seeking to remove *Nobers II* based on intervening United States Supreme Court decisions about the scope of ERISA preemption. The district court ruled, however, that this second attempt at removal was untimely. Colt and Crucible petitioned for mandamus from this court, but we denied the petition. *Crucible Inc. v. Zeigler*, 908 F.2d 962 (3d Cir.1990). *Nobers II* is therefore still pending in state trial court.

Finally, the Crucible employee benefit *plans* (but not Crucible and Colt themselves) brought this action in federal district court under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), seeking declaratory guidance as to their obligations to the appellees. The district court had jurisdiction under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). In addition to a declaratory judgment, the plans seek to enjoin the defendant-appellees here (the plaintiffs in *Nobers II*) from further prosecuting *Nobers II* in state court. On May 30, 1991, the district court denied injunctive relief, but allowed discovery to proceed on the plans' requests for declaratory relief.

■ To ensure immediate appealability of the denial of injunctive relief, the plans requested that the district court enter a final judgment under FRCP 54(b) on that claim. On June 26, 1991, the district court did so. We therefore have jurisdiction over the plans' appeal under 28 U.S.C. § 1291.

Our review is plenary. *Carey v. Pennsylvania Enterprises*, 876 F.2d 333, 337 (3d Cir.1987).

## II. AVAILABILITY OF AN INJUNCTION UNDER THE ANTI–INJUNCTION ACT

■ The plans request that we reverse the district court's judgment refusing to enjoin the appellees from prosecuting *Nobers II* in Pennsylvania court. Under the Anti–Injunction Act,

[a] court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments.

28 U.S.C. § 2283. Although technically the plans seek only to enjoin the appellees and not the state court proceeding itself, the Anti–Injunction Act cannot be evaded by such a formality. See, for example, *Atlantic Coast Line Railroad v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). Moreover, the three exceptions in the Anti–Injunction Act are exclusive: an injunction against *Nobers II* is proper only if it falls within one of them. See, for example, *Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988); *Amalgamated Clothing Workers of America v. Richman Brothers*, 348 U.S. 511, 514–16, 75 S.Ct. 452, 454–55, 75 S.Ct. 452, 99 L.Ed. 600 (1955). We take up the exceptions in the order pressed by the plans.

### A. "Necessary in Aid of Its Jurisdiction"

The plans contend that the subject matter of *Nobers II* is, under ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1), subject to exclusive federal jurisdiction, and therefore the requested injunction falls under the second exception to the Anti–Injunction Act because it is necessary in aid of the district court's (exclusive) jurisdiction over claims of this sort. We must first determine whether federal courts have exclusive juris-

diction over the claims in *Nobers II;* if so, we must then determine whether, as the plans claim, that is sufficient to invoke the "necessary in aid of its jurisdiction" exception.

### 1. *Preemption and Exclusive Federal Jurisdiction*

■ The plans contend that *Nobers II,* although nominally a contract action against Colt and Crucible, "relates to," and implicates construction of, an ERISA plan. Section 514(a) of ERISA provides (with exceptions not relevant here) that subchapters II and III of ERISA (covering, among other things, jurisdiction, administration, enforcement, and plan termination insurance) "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA-covered] employee benefit plan...." 29 U.S.C. § 1144(a) (1988). Therefore, if *Nobers II* "relates to" an ERISA plan, it is preempted even if it states an otherwise valid state law claim.

■ In determining whether *Nobers II* "relates to" an ERISA plan, we are guided by the Supreme Court's recent decision in *Ingersoll–Rand Corp. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), which reaffirmed the Court's expansive definition of "relationship to" ERISA plans, and therefore also confirmed the broad scope of ERISA preemption established in earlier cases such as *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542 (1987). In *Ingersoll–Rand,* the plaintiff filed a wrongful discharge action based on state law tort and contract theories, alleging that his employer terminated him out of a desire to avoid contributing to the pension fund.

The Supreme Court unanimously held that the action was preempted.

Six Justices concluded that because the existence of an ERISA plan was a critical factor in establishing liability, and because the trial court's inquiry would be directed to the plan, the suit "related to" an ERISA plan, and hence was preempted. *Id.* at 483. In short, if there were no plan, there would have been no cause of action. Moreover, all nine Justices agreed on the narrower ground that the suit was preempted because it conflicted directly with an ERISA cause of action. The Court observed that section 510 of ERISA, 29 U.S.C. § 1140 (1988), creates a cause of action for interfering with the attainment of a right under an ERISA plan, and the plaintiff could and should have sued on that federal cause of action. 111 S.Ct. at 485.

*Ingersoll–Rand* controls the preemption question in this case. The plans are certainly correct that the claim in *Nobers II* depends on the existence of an ERISA plan. If an ERISA plan did not exist, the appellees would never have brought *Nobers II.* Furthermore, the trial court's inquiry in *Nobers II* would be directed to ERISA plans, in that the calculation of damages would involve construction of ERISA plans, even though Colt and Crucible, not the plans themselves, would not be liable for the damages. The appellees place great emphasis on the fact that *Nobers II* is a suit against an employer, not ERISA plans or their administrators. But that defense is unavailing after *Ingersoll–Rand,* which concluded that ERISA preempted a suit against an employer.[2]

In sum, *Nobers II* "relates to" an ERISA plan and is accordingly preempted by ERISA section 514(a), 29 U.S.C. § 1144(a).[3]

**2.** The appellees also rely on *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), but that case is easily distinguished. There the Supreme Court held that ERISA did not preempt a Maine severance pay statute because it did not "relate to" employee benefit *plans* (as opposed to employee benefits in general). To be preempted, held the Court, a statute must have some connection to an ERISA plan, and the Maine statute did not establish or require an employer to maintain a plan, nor did it threaten the underlying purposes of ERISA.

Here, in contrast, a plan most certainly exists, and the appellees measure their damages in *Nobers II* by reference to that plan.

**3.** Because of this conclusion, we need not also decide whether *Nobers II* is preempted under the alternative rationale in *Ingersoll–Rand*—that ERISA section 510, 29 U.S.C. § 1140, provides the plaintiffs a cause of action that directly conflicts with the state law claims asserted in the state court suit.

Moreover, although actions under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits due under a plan, to enforce rights under a plan, or to clarify rights to future benefits under a plan, are subject to concurrent state and federal jurisdiction, see ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1), *Nobers II* is not such an action. As a result, even if *Nobers II* had been properly brought under ERISA, federal jurisdiction over the appellees' claim would have been exclusive. Id.

### 2. *Availability of an Injunction*

According to the plans, the district court should have granted an injunction to protect its exclusive jurisdiction over this general subject matter. The Supreme Court, however, has repeatedly held that federal preemption, or even a statutory grant of exclusive federal jurisdiction, does not, by itself, provide federal courts with the power to enjoin illegal state proceedings. In *Choo,* for example, the Supreme Court reiterated its earlier holding that

> a federal court does not have inherent power to ignore the limitations of [28 U.S.C.] § 2283 and to enjoin state proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear.

486 U.S. at 149, 108 S.Ct. at 1691 (1988) (quoting *Atlantic Coast Line,* 398 U.S. at 294, 90 S.Ct. at 1747).

In *Amalgamated Clothing Workers,* the Court rejected outright the position pressed by the plans here, when it ruled that the Anti–Injunction Act "does not apply whenever the moving party in the District Court alleges that the state court is 'wholly without jurisdiction over the subject matter, having invaded a field preempted by Congress.'" 348 U.S. at 515, 75 S.Ct. at 455.[4] See also *Texas Employers' Insurance Association v. Jackson,* 862 F.2d 491, 498–99 (5th Cir.1988) (en banc). In essence, the "necessary in aid of its jurisdiction" exception is narrow and applies only in aid of a court's exclusive jurisdiction over a particular case, not over a general class of cases. Accordingly, the typical application of this exception has been in removal cases (where a district court must ensure its exclusive governance of the particular litigation removed)[5] and in *in rem* cases (where, under the traditional view, only one court can entertain jurisdiction over a particular physical *res* ). See Erwin Chemerinsky, *Federal Jurisdiction* § 11.2.3 at 563–65 (Little, Brown, 1989). See also *Jennings v. Boenning & Co.,* 482 F.2d 1128, 1131–35 (3d Cir.1973).

---

**4.** The plans rely on *Capital Service, Inc. v. NLRB,* 347 U.S. 501, 74 S.Ct. 699, 74 S.Ct. 699, 98 L.Ed. 887 (1954), but in that case the Supreme Court held that a federal injunction against enforcement of a state court order was necessary in aid of the district court's jurisdiction over the particular case before it (an action by the NLRB to enjoin picketing pending the adjudication of an unfair labor practice complaint). In dictum, the Court stated that "where Congress, acting within its constitutional authority, has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in the conflict of functions, the federal court may enjoin the state proceeding." Id. at 504, 74 S.Ct. at 702. That discussion was preceded, however, with the qualification "[i]n absence of a command of the Congress to the contrary," and was followed with a mention of just such a command, the Anti–Injunction Act.

The plans also cite *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944), which involved the predecessor of section 2283,

but we believe that *Bowles* rested on the Court's interpretation of section 205 of the Price Control Act as creating an exception to the predecessor of section 2283. See *Porter v. Dicken,* 328 U.S. 252, 255 & n. 1, 66 S.Ct. 1094, 1096 & n. 1, 90 L.Ed. 1203 (1946). *Bowles* therefore has no application here.

Finally, the plans cite and essentially rely on the reasoning of Chief Justice Warren in his dissent in *Amalgamated Clothing,* which recited the legislative history behind the Anti–Injunction Act and the case law under its predecessor, including *Bowles.* Suffice it to say that we cannot follow the dissenting views of three Justices when a majority of the Court rejected them not only then, but consistently in succeeding cases.

**5.** The removal cases may also fall under the "expressly authorized" exception, because 28 U.S.C. § 1446(e) (1988) provides that upon removal the "State court shall proceed no further unless and until the case is remanded." See *Mitchum v. Foster,* 407 U.S. 225, 234–37, 92 S.Ct. 2151, 2158–59, 32 L.Ed.2d 705 (1972).

■ Under this exception to the Anti–Injunction Act, then, the plans must show that an injunction of *Nobers II* is necessary in aid of the district court's jurisdiction over the very case before it: the plans' declaratory judgment action. In *Atlantic Coast Line*, the Court emphasized the word "necessary," and held that for the exception to apply, a state court case must "so interfer[e] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility to decide that case." 398 U.S. at 295, 90 S.Ct. at 1747. In this case, *Nobers II* does not purport to determine the plans' obligations. The plans are not even parties to *Nobers II*, so we find no reason to conclude that an injunction of *Nobers II* is necessary for the district court in aid of its jurisdiction over this case.

In sum, the Pennsylvania court's assumption of jurisdiction over *Nobers II* is in violation of ERISA's supersedure provisions, but an injunction does not lie simply because of that fact. Instead, we must assume that the state courts will faithfully follow federal law. On that score, we note that the preemption issue here was not definitively resolved until *Ingersoll–Rand*, which was decided *after* the Pennsylvania Superior Court had ruled that *Nobers II* was not preempted. Perhaps the Pennsylvania trial and intermediate appellate courts will now reconsider their holding. If not, then the proper avenue of redress is appeal through the state court system, and ultimately, if necessary, to the United States Supreme Court. See *Atlantic Coast Line,.* 398 U.S. at 287, 90 S.Ct. at 1743.

### B. *"Expressly Authorized by Act of Congress"*

■ A federal court may enjoin a state proceeding if "expressly authorized by Act of Congress." 28 U.S.C. § 2283 (1988). That wording is deceptively simple, however. The Supreme Court has emphasized

that the injunction-authorizing statute need not expressly refer to the Anti–Injunction Act. *Amalgamated Clothing Workers*, 348 U.S. at 516, 75 S.Ct. at 455 ("no prescribed formula is required; an authorization need not expressly refer to § 2283"). Moreover, the Court has also unanimously held that "a federal law need not expressly authorize an injunction of a state court proceeding in order to qualify" under the "expressly authorized" exception. *Mitchum v. Foster*, 407 U.S. 225, 237, 92 S.Ct. 2151, 2159, 32 L.Ed.2d 705 (1972).[6] Instead, the test is more complex:

> [I]t is clear that, in order to qualify as an "expressly authorized" exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, that could be frustrated if the federal court were not empowered to enjoin a state proceeding. This is not to say that in order to come within the exception an Act of Congress must, on its face and in every one of its provisions, be totally incompatible with the prohibition of the anti-injunction statute. The test, rather, is *whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding.*

Id. at 237–38, 92 S.Ct. at 2159–60 (emphasis added; footnote and citations omitted).

In *Mitchum* itself, the Supreme Court had no trouble concluding that 42 U.S.C. § 1983 was an "expressly authorized" exception allowing injunctions of state courts, even though the statute on its face merely authorized suits in equity without specifying state courts as the subjects. The Court detailed the legislative history of section 1983, and found that the Civil Rights Act of 1871 was clearly intended to enforce the Fourteenth Amendment against state action, including judicial action. 407 U.S. at 238–43, 92 S.Ct. at 2156–60. The *Mitchum*

---

**6.** In *Mitchum*, all seven Justices taking part joined Justice Stewart's opinion of the Court. Justices Powell and Rehnquist took no part in the case. Chief Justice Burger and Justices White and Blackmun concurred to emphasize that even when the Anti–Injunction Act does not

bar an injunction against a state court proceeding, principles of equity, comity, and federalism may independently weigh against an injunction, as in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.

test, however, has proven more difficult to apply to other statutes that also authorize injunctions in general (not specifically against state proceedings), but whose legislative intent regarding injunctions of state courts is less clear.

The only Supreme Court case on this point since *Mitchum* is *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), where the Court split three ways over whether section 16 of the Clayton Act, 15 U.S.C. § 26, "expressly authorized" injunctions against state court proceedings that themselves violate the antitrust laws. The lead opinion by Justice Rehnquist, joined by Justices Stewart and Powell, concluded that although an antitrust action is a uniquely federal right or remedy, the Clayton Act could be given its intended scope without staying the state court proceeding. Distinguishing *Mitchum* by noting the lack of clear legislative history regarding the Clayton Act, id. at 633–35, 97 S.Ct. at 2888–89, and fearing that a broad reading would mean that all federal statutes authorizing general injunctions would be exceptions to the Anti–Injunction Act, id. at 635–39, 97 S.Ct. at 2889–91, Justice Rehnquist insisted that "the Act countenancing the federal injunction must necessarily interact with, or focus upon, a state judicial proceeding." Id. at 640–41, 97 S.Ct. at 2892.

That view, however, did not command a majority of the Court.[7] Justice Stevens, dissenting with Justices Brennan, White, and Marshall, believed that where the state proceedings were themselves an antitrust violation, they could be enjoined because only in that way could the antitrust laws be given their full scope. Id. at 656–58, 97 S.Ct. at 2900–01. Justice Blackmun, joined by Chief Justice Burger, appeared to agree

with the dissenters on that point (the concurrence is somewhat ambiguous), but disagreed with them on the underlying issue of antitrust law. Because the concurring Justices believed that the state proceedings were not a pattern of baseless, repetitive claims, they agreed with Justice Rehnquist's conclusion that section 16 did not authorize the injunction given in that particular case. Id. at 643–45, 97 S.Ct. at 2893–94. Thus although six Justices seemed to believe that the Clayton Act authorizes injunctions of some state court proceedings, a majority held that no injunction was proper on those facts.

In this case, the plans contend that section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (1988), "expressly authorizes" injunctions of state courts violating section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), the exclusive jurisdiction provision of ERISA discussed above. Section 502(a)(3) of ERISA provides that a participant, beneficiary, or fiduciary may bring an action

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). The plans argue that because *Nobers II* violates the exclusive jurisdiction provision in subsection (e)(1) of that same section, subsection (a)(3) authorizes an injunction against *Nobers II*.[8]

We do not write on a clean slate on this subject. In *United States Steel Corp. Plan for Employees Insurance Benefits v. Musisko*, 885 F.2d 1170 (3d Cir.1989), this court held that ERISA contained no "express authorization" of an injunction of

---

**7.** Justice Rehnquist's opinion is frequently referred to as the plurality opinion, but that is not technically correct. His opinion garnered three votes, and two Justices concurred in the result while disagreeing almost entirely with Justice Rehnquist's rationale. In fact, as we shall explain, the views of the two concurring Justices on the Anti–Injunction Act (as opposed to the underlying question of antitrust law) were closer to those of the four dissenting Justices. Justice Rehnquist's views were therefore only a

plurality of the majority, not of the whole Court. We therefore refer to it as the lead opinion.

**8.** As an initial matter, the Fifth Circuit has questioned whether a state court suit truly "violates" 29 U.S.C. § 1132(e)(1), as the verb is used in 29 U.S.C. § 1132(a)(3). See *Total Plan Services v. Texas Retailers Association*, 925 F.2d 142, 144 (5th Cir.1991). We will assume, however, that *Nobers II* "violates" the supersedure and exclusive jurisdiction provisions of ERISA.

preempted state proceedings. We noted that nothing in the language of ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), suggests that Congress intended that injunctions be granted against state tribunals exceeding their jurisdiction. We further searched the legislative history for such an indication and found none. Id. at 1177.

The plans suggest that *Musisko* is distinguishable because there the underlying state law claim was by a beneficiary to recover benefits from a plan, and under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), federal jurisdiction over such claims (if brought under ERISA[9]) is not exclusive, but concurrent with state courts'. Such a distinction of *Musisko* would be disingenuous. In *Musisko,* we did mention that state courts have concurrent jurisdiction over some ERISA claims, 885 F.2d at 1177, but our purpose there was to distinguish *Mitchum* and point out that Congress had no overarching distrust that state courts would disregard ERISA, unlike Congress's concerns about state court violations of section 1983. The fact of concurrent jurisdiction in that particular case was irrelevant to the decision, as is the fact of exclusive jurisdiction in this case. See also *Total Plan Services v. Texas Retailers Association,* 925 F.2d 142, 145 n. 2 (5th Cir.1991) (following *Musisko* and rejecting arguments identical to those raised by the plans here).

At all events, even if *Musisko* were not binding precedent, we would conclude, under the standard in *Mitchum* that ERISA can be given its intended scope without enjoining suits such as *Nobers II.* Although Congress established exclusive federal jurisdiction over some ERISA claims, the plans offer no evidence that Congress so distrusted state courts that it expected that state courts would fail to comply in good faith with the supersedure and exclusive jurisdiction provisions of ERISA. Moreover, although at least four and perhaps six Justices in *Vendo* may have concluded that in order to fully enforce the Clayton Act, federal courts needed to be

able to restrain *substantive* violations of that Act (including repetitive, harassing state court lawsuits), *Nobers II* does not force the plans to violate *substantive* ERISA law. Even if *Nobers II* goes to trial and the appellees prevail, Colt and Crucible, not the plans, will pay the judgment. No assets of the plans will be transferred, and *Nobers II* will have no binding effect on the plans, so it will not prevent them from complying with ERISA.

The plans ask us to follow *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir. 1980), which held that ERISA expressly authorized an injunction against a state court writ garnishing ERISA benefits. In *Musisko,* we expressed reservations about *Buha,* but felt it distinguishable. The Fifth Circuit in *Total Plan Services* went even further and rejected *Buha* outright. We reaffirm our conclusion in *Musisko* that *Buha* is questionable but distinguishable. Whereas in *Buha* the Sixth Circuit concluded that the state writ would have made it impossible for the plan fiduciary there to carry out its duties under ERISA, we see no reason why the appellees' success in *Nobers II* will make it impossible for these plans to comply with ERISA.

In sum, we hold that section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), does not "expressly authorize" injunctions of state court actions simply because they are preempted by ERISA, even if the state court claims are subject to exclusive federal jurisdiction.

### C. *"To Protect or Effectuate Its Judgments"*

 Finally, the plans contend that an injunction is necessary to protect and effectuate the district court's judgment in *Nobers I,* which, among other things, rejected the appellees' LMRA claims and dismissed their ERISA claims for failure to join proper parties and to exhaust administrative remedies. The plans, however, were not parties in *Nobers I,* and they have not

---

**9.** The preemption and supersedure provision of ERISA section 514(a), 29 U.S.C. § 1144(a), still applies.

explained why they have standing to seek such an injunction under this res-judicata-based exception to the Anti–Injunction Act. At all events, Colt and Crucible, which were parties to *Nobers I*, sought an injunction on precisely this ground in 1985. The district court denied the injunction, and this court affirmed. *Colt Industries v. Nobers*, No. 85–563 (W.D.Pa. Aug. 12, 1985), aff'd, 787 F.2d 581 (3d Cir.1986). We see no basis to reexamine that question now, when the same claim has been brought in a different guise.

## III. CONCLUSION

Although ERISA preempts the appellees' state-law claims in *Nobers II*, the appellant plans are not entitled to an injunction against *Nobers II* because none of the three exceptions to the Anti–Injunction Act applies. The judgment of the district court will therefore be affirmed.